# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| TANJA BENTON, | |
| Plaintiff, | Case No. 1:22-cv-00118-CEA-SKL |
| v. | District Judge Charles E. Atchley, Jr. |
| BLUECROSS BLUESHIELD OF TENNESSEE, INC. | Magistrate Judge Susan K. Lee |
| Defendant. | JURY DEMANDED |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant BlueCross BlueShield of Tennessee, Inc. ("BCBST") Answers and provides its Affirmative Defenses to Plaintiff Tanja Benton's ("Plaintiff's") Complaint:

### FIRST AFFIRMATIVE DEFENSE

BCBST asserts and alleges that any damages alleged in the Complaint are barred because BCBST discharged its obligation to provide Plaintiff a reasonable accommodation under all theories to which it is applicable.

### SECOND AFFIRMATIVE DEFENSE

BCBST asserts and alleges that any damages in the Complaint are barred because it is an undue burden to BCBST's operations and business to provide Plaintiff an indefinite exception to BCBST's vaccine policies applicable to public-facing employees such as Plaintiff.

### THIRD AFFIRMATIVE DEFENSE

The Complaint, and the causes of action stated therein, fail to state a claim upon which relief can be granted.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by her failure to mitigate properly or adequately her alleged damages.

## FIFTH AFFIRMATIVE DEFENSE

Without admitting that Plaintiff incurred any damages, BCBST avers that it is entitled to set-off against any recovery by Plaintiff, which must be reduced by any amount of money or other benefit she received from any other source.

## I. JURISDICTION

1. BCBST admits the allegations in paragraph 1.

2. BCBST admits the allegations in paragraph 2.

## II. NATURE OF PROCEEDING

3. Answering paragraph 3, BCBST admits that Plaintiff seeks the relief asserted but denies the remainder of the allegations—including that any of the aforementioned relief "may be necessary to effectuate the purposes of Title VII and the THRA." BCBST asserts affirmatively that Title VII and the THRA contemplate that employers accommodate an employee's sincerely held religious beliefs (in limited and defined circumstances here not present) provided such accommodation does not unduly burden the employer's business operations. Consistent with that obligation -- and in furtherance of Title VII and the THRA -- BCBST provided the following reasonable accommodations to Plaintiff without burdening its operations: for a period of not less than thirty days (referred to as the "Accommodation Period"), BCBST modified Plaintiff's job by temporarily removing her public-facing responsibilities so Plaintiff could remain in her position; during the Accommodation Period, BCBST encouraged Plaintiff to apply for non-public-facing positions within BCBST; and at the end of the Accommodation Period, BCBST reevaluated the

accommodation (as BCBST told Plaintiff it would do) considering the needs of the Company -- including, *inter alia*, the needs of its clients, members, and healthcare providers -- along with the demands and essential functions of Plaintiff's job position. Moreover, despite having ended the employment relationship for cause -- which, under standard Company policy would have rendered her ineligible for rehire -- BCBST designated Plaintiff as eligible for rehire, thus enabling her to continue seeking positions at BCBST not subject to the vaccine mandate.

### III. THE PARTIES

4. Upon in information and belief, BCBST admits the allegations in paragraph 4.

5. BCBST admits the allegations in paragraph 5.

### IV. FACTUAL BASES OF PLAINTIFF'S CLAIMS

6. Answering paragraph 6, BCBST admits that it employed Plaintiff from July 2005 through November 4, 2021; denies that Plaintiff's employment was terminated "involuntarily;" and affirmatively asserts that Plaintiff's employment ended because of the known consequences of her choice to refuse vaccination -- consequences that BCBST identified, explained to, and discussed with Plaintiff and that she considered in making her decision.

7. BCBST admits the allegations of paragraph 7.

8. Answering paragraph 8, BCBST denies that Plaintiff's job rarely involved direct interaction with representatives of BCBST group health plan accounts (BCBST's group health plan accounts and their representatives assigned to Plaintiff and BCBST employees in her position are referred to herein as "Clients"); denies that only one percent of Plaintiff's historical annual working hours involved Client interaction; and affirmatively asserts that Plaintiff regularly interacted with Clients (and others) via in-person, face-to-face meetings before the pandemic forced BCBST to temporarily transition employees to remote work.

9. Answering paragraph 9, BCBST denies that Plaintiff had a portfolio of 10 to 12 Clients with whom she met only once per year, and affirmatively asserts that Plaintiff had a portfolio of exactly 12 Clients when her employment ended and that Clients determined the frequency, length, and setting of such meetings. BCBST further denies the implication that Plaintiff could safely attend meetings unvaccinated, as the Centers for Disease Control and Prevention (among many other resources) has indicated that exposure within 6-feet to a person infected with COVID-19 for 15-minutes or more constitutes "close contact" thereby creating high risk of transmission. Accordingly, any in-person Client meeting Plaintiff attended unvaccinated within the scope of her employment presented an unreasonable risk to BCBST's Clients, employees, members, and other third parties with whom BCBST does business. That risk is particularly acute for those Clients that are group health plans sponsored by providers, hospitals, and other healthcare facilities because Plaintiff could expose clinicians, along with the patients and members those clinicians and Clients served or otherwise interacted.

10. Answering paragraph 10, BCBST denies that Plaintiff never performed any work or attended any meetings in medical facilities where patients were being treated, and -- because the virus does not discriminate based upon where in-person meetings are held or the role of individuals participating -- denies the implication that attending meetings in-person outside of clinical settings prevented Plaintiff from exposing Clients and others to COVID-19. BCBST further asserts affirmatively that the virus is transmitted through aerosol-based community spread, such that Plaintiff attending a BCBST Client meeting while exposed to and/or infected with COVID-19 -- even if off-site or in a non-clinical setting --  puts other attendees at risk, along with all those with whom those attendees interact, those who interact with those exposed to attendees, and so on. Because such ever-expanding circles of indirect exposure causes virus transmission to

surge exponentially, allowing Plaintiff to personally meet with Clients unvaccinated -- whether at a Client-provider site where patients are treated or elsewhere -- unreasonably risks spreading COVID-19 to BCBST employees and Clients attending those meetings, those with whom such attendees come into contact, and the community at large. BCBST cannot reasonably permit (or worse, force) that burden on its other employees, Clients, and members as an "accommodation" for an individual employee.

11. Answering paragraph 11, BCBST admits that most (but not all) of Plaintiff's Client meetings were conducted in person, and denies that Plaintiff could have feasibly continued working in a remote capacity indefinitely. BCBST asserts affirmatively that Clients -- not BCBST -- dictate when, where, and how often to meet with BCBST's Bios-Statistical Research Scientists ("Research Scientists"). Because BCBST could not continue allowing remote work for this position more than temporarily without fundamentally restructuring how BCBST assigns Research Scientists to Clients -- and without potentially damaging existing Client relationships -- BCBST denies that Plaintiff could have performed her duties remotely on an indefinite basis without unduly burdening BCBST's operations.

12. Answering paragraph 12, BCBST denies that Plaintiff normally worked alone and independently; denies that physical in-person interaction with co-workers was never a job requirement; but lacks sufficient information to admit or deny how regularly Plaintiff sought input from her peers. BCBST asserts affirmatively that, prior to the pandemic, when not meeting with Clients in-person, Plaintiff worked primarily at BCBST's Chattanooga campus in the presence of other BCBST employees.

13. Answering paragraph 13, BCBST admits that Plaintiff temporarily performed work duties remotely from March 16, 2020, through the end of her employment; denies that Plaintiff

was required to work "100 percent" from home beginning on March 16, 2020; and denies that Plaintiff performed 100 percent of her job duties remotely without any problems or complaints from anyone. BCBST affirmatively asserts that its directive for Research Scientists and other positions that included similar in-person requirements to work remotely was temporary and that Clients began requesting and requiring that BCBST employees resume in-person operations -- as well as require that BCBST employees comply with the Clients' vaccine mandates.

14. Answering paragraph 14, BCBST admits that Plaintiff conducted Client meetings by remote means during the temporary 19-month work-from-home-period; denies that no Client expressed concerns or problems about remote interactions; admits it ended the Accommodation Period (partially) in response to Clients concerns with and obstacles to continuing remote interactions -- especially those Clients who were resuming in-person operations -- and denies the implication that Clients' (allegedly) not specifically requesting in-person interactions from Plaintiff has any bearing on the reasonableness of Plaintiff's request for an open-ended, indefinite "at home work" accommodation.

15. BCBST admits the allegations of paragraph 15.

16. Answering paragraph 16, and upon information and belief, BCBST denies that Plaintiff actually has a sincerely held religious belief that prevents her from receiving vaccines that are "derived from aborted fetus cell lines;" lacks sufficient information about Plaintiff's personal "research" on the COVID-19 vaccines needed to admit or deny whether the sources she reviewed indicate that the COVID-19 vaccine was so derived; and denies that the COVID-19 vaccine was derived from aborted fetus cell lines, which is verifiably false. To the extent Plaintiff asserts she will not take the COVID-19 vaccine because it was derived from aborted fetus cell lines and thus consuming it would "defile her body but also anger and dishonor God," BCBST denies the same.

17. Answering paragraph 17, BCBST admits that, on September 15, 2021, Plaintiff submitted to BCBST's Human Resources Department a request for a purported religious accommodation concerning the vaccine mandate; admits that Plaintiff provided a stated religious objection to the COVID-19 vaccinations in her request; but denies on information and belief that Plaintiff sincerely believed the objection she provided.

18. BCBST admits the allegations of paragraph 18.

19. BCBST admits the allegations of paragraph 19.

20. Answering paragraph 20, BCBST denies that Plaintiff's job assignment does not entail regular public-facing interactions; admits that the job assignment includes regular public-facing interactions -- which, if such interactions occur while unvaccinated, create a high risk of infecting others with COVID-19; lacks sufficient information to admit or deny whether anyone stated, "[t]here are no exceptions" to the vaccine requirement for Research Scientists; denies that there were "no exceptions" to the requirement; and asserts affirmatively -- as admitted by Plaintiff in paragraph 21 of the Complaint -- that BCBST did provide an exception to its mandate for at least thirty days, wherein it temporarily allowed Plaintiff to continue working remotely and apply for other jobs at BCBST that did not entail public-facing responsibilities.

21. Answering paragraph 21, BCBST denies that Plaintiff was advised she would be given thirty days from October 4, 2021 to pursue other positions not subject to its vaccine mandate, and admits that Plaintiff was provided the Accommodation Period to perform her job (with temporary modifications to her duties) and to look for other positions. BCBST further affirmatively avers that, when offering the Accommodation Period, it agreed to monitor and periodically reassess whether to extend the Accommodation Period based on the rapidly-evolving landscape regarding the spread of COVID-19 and the demands of its Clients and the Research

Scientist job position.

22. Answering paragraph 22, BCBST denies that it provided Plaintiff no assistance in finding a vacant position not subject to the vaccine mandate; admits that it informed Plaintiff that she -- like all internal and external candidates for all job openings -- would be required to participate in a competitive selection process for alternative positions; denies that this aspect of the accommodation treated Plaintiff the same as any other candidate applying for such positions; and affirmatively avers that Plaintiff's tenure with BCBST gave her an advantage over external candidates. Moreover, BCBST affirmatively avers that allowing Plaintiff to remain in her assigned job position with modified job duties for the Accommodation Period, considering Plaintiff for other positions during the Accommodation Period, and designating her as eligible for rehire individually and collectively assisted (and continue to assist) Plaintiff in finding an alternative position within BCBST.

23. BCBST admits the allegations of paragraph 23.

24. Answering paragraph 24, BCBST denies that the accommodation was a "Safe Harbor period;" admits it provided an accommodation that was subject to re-evaluation for continued feasibility after a specified time period (30 days); admits that Plaintiff voiced dissatisfaction to BCBST via email on October 27, 2021; and admits that Plaintiff applied for two vacant positions that were not subject to BCBST's vaccine mandate. BCBST lacks sufficient information to admit or deny whether Plaintiff experienced difficulty locating alternative positions that were not subject to the vaccine mandate (and that would meet her egocentric pay grade needs, skills, and qualifications), and it lacks sufficient information to admit or deny whether Plaintiff made a good-faith effort to secure more than just the two jobs for which she ultimately applied.

25. BCBST admits the allegations of paragraph 25.

26. Answering paragraph 26, BCBST denies that the Accommodation Period "was hollow," and denies that it has implemented a COVID-19 vaccine mandate for all jobs. BCBST admits that -- pursuant to the U.S. President's Executive Order 14042 (which mandated COVID-19 vaccinations for employees of federal contractors) and guidance from the Safer Federal Workforce Task Force (which set the compliance deadline for the Executive Order as December 8, 2021) -- it announced a vaccine mandate for all employees, however, before the Executive Order's implementation, a federal district court issued a temporary restraining order and preliminary injunction staying enforcement of the mandate in Tennessee. Due to that preliminary injunction, BCBST's company-wide vaccine mandate has not gone into effect, thus BCBST denies that the two positions to which Plaintiff applied are subject to a vaccination mandate. BCBST further admits that Brooke Cordell (based on her understanding and belief at the time) informed Plaintiff that all positions were subject to and might require vaccination against COVID-19 -- even though that information ultimately proved inaccurate as an "all-position" mandate was not implemented.

## V. ADMINISTRATIVE EXHAUSTION

27. BCBST admits the allegations of paragraph 27.

## VI. PLAINTIFF'S CLAIMS

Count I: Title VII Religious Accommodation

28. BCBST admits the allegations of Paragraph 28.

29. BCBST admits the allegations of Paragraph 29.

30. Answering Paragraph 30, BCBST denies that it terminated Plaintiff only because she refused to comply with its COVID-19 vaccine mandate; admits Plaintiff's employment ended both because she remained in a public-facing position and refused to comply with the applicable

COVID-19 vaccine mandate; admits Plaintiff's employment would not have ended on those grounds had Plaintiff successfully applied for a non-public-facing position within BCBST; and denies on information and belief that Plaintiff objected to BCBST's vaccine mandate on the basis of a sincerely held religious belief.

31. BCBST denies the allegations of paragraph 31.

32. BCBST denies the allegations of paragraph 32.

33. BCBST denies the allegations of paragraph 33.

Count II: THRA Religious Accommodation

34. BCBST admits the allegations of paragraph 34.

35. BCBST denies the allegations of paragraph 35.

## VII. DAMAGES

36. BCBST denies the allegations of paragraph 36.

## VIII. PRAYER FOR RELIEF

37. The paragraph entitled "Prayer for Relief" contains no factual allegations to which the Company can respond. To the extent that this Paragraph requires a response, BCBST denies that Plaintiff is entitled to any relief requested therein under any legal theory whatsoever.

WHEREFORE, promises considered, BCBST prays that Plaintiff's Complaint be dismissed, with prejudice, and BCBST be awarded its costs and fees as the prevailing party herein pursuant to Tenn. Code Ann. § 20-17-107.

DATED this 5th day of July, 2022

                    */s/ Robert E. Boston*
                    Robert E. Boston (Tenn. BPR # 009744)
                    Joshua T. Wood (Tenn. BPR # 035395)
                    WALLER LANSDEN DORTCH & DAVIS, LLP
                    511 Union Street, Suite 2700
                    Nashville, TN 37219
                    Telephone: (615) 244-6380
                    bob.boston@wallerlaw.com
                    josh.wood@wallerlaw.com

                    *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 5th day of July, 2022, a true and correct copy of the foregoing document was electronically filed with the United States District Court for the Eastern District of Tennessee using the Court's Electronic Case Filing (ECF) system, which will serve all parties below as indicated on the electronic filing notice to receive service in this manner.

Douglas S Hamill
Mikel & Hamill PLLC
620 Lindsey Street, Suite 200
Chattanooga, TN 37403
423-541-5400
Email: dhamill@mhemploymentlaw.com

                    */s/ Robert E. Boston*
                    Attorney for Defendant