UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TANJA BENTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:22-cv-00118-CEA-SKL |
| | ) |
| BLUECROSS BLUESHIELD OF | ) |
| TENNESSEE, INC., | ) |
| | ) |
| Defendant. | ) |

### MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF SCIENTIFIC STUDIES OR OTHER MEDICAL EVIDENCE RELIED UPON BY DR. ANDREA WILLIS

Comes Plaintiff, pursuant to Rule 37(d) of the Federal Rules of Civil Procedure, and moves for a pre-trial Order excluding BCBST's witness, Dr. Andrea Willis, from referring to any scientific or medical studies upon which she reviewed or the summary of which she conveyed to BCBST's executive leadership team in the summer of 2021 while formulating the company's public-facing employee Covid vaccination mandate. Such excluded references also should cover the topic of Dr. Willis' consideration of alternative options to mandatory vaccination, such as the use of face masks, social distancing, periodic Covid testing, and permanent remote work assignments.

Dr. Andrea Willis is BCBST's Chief Medical Officer and was a member of BCBST's executive leadership team in the summer of 2021 when it developed the company's public-facing employee Covid vaccination mandate. BCBST first disclosed Dr. Willis as a material witness on its late-filed final witness list. Plaintiff thereafter filed a motion to exclude Dr. Willis from testifying at trial or rendering testimony at the summary judgment stage. After a hearing on the motion, Magistrate Judge Lee ruled that BCBST had "violated its obligations to timely file its final witness list under the

Court's Scheduling Order [Doc. 13, as amended by Doc. 29] and Federal Rule of Civil Procedure 26(e) to timely supplement its initial disclosures to identify Dr. Willis as an 'individual likely to have discoverable information.'" (Doc. 39, PageID#: 226.) Rather than excluding Dr. Willis' testimony, the Court ordered expedited written discovery tailored to Dr. Willis' anticipated testimony and an expedited post-discovery deposition of Dr. Willis. (Doc. 39, PageID#: 227-28.)

Pursuant to the Court's Order, Plaintiff immediately propounded targeted discovery to BCBST regarding Dr. Willis' anticipated testimony. In document request number 2, Plaintiff asked for the following documents: "Produce all documents (including but not limited to medical research, scientific studies, government publications, and industry guidelines) upon which Dr. Andrea Willis relied upon in providing advice or recommendations concerning the development of Defendant's public-facing Covid vaccination mandate." BCBST responded as follows:

> BCBST objects to the request to the extent it seeks information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege recognized at law. BCBST further objects that Dr. Willis cannot recall all documents upon which she relied to provide advice regarding the development of BCBST's COVID policies, as the influx of new evidence about COVID developed at a rapidly and constantly during the applicable time period. Even if BCBST could identify all evidence Dr. Willis reviewed (which it cannot), Dr. Willis cannot readily identify each shred of evidence she relied upon from all evidence reviewed. Subject to and without waiving the foregoing objections, BCBST has produced the responsive, non-privileged documents it could locate following a reasonable and good-faith search.

(Exhibit 1, BCBST resp. to RFP #2.)

BCBST produced approximately 1,000 pages of documents in response to Plaintiff's targeted discovery requests concerning Dr. Willis. However, no medical or scientific studies were included among the document production.

When Dr. Willis was deposed, she claimed to have read and relied upon several scientific studies in giving advice to BCBST's executive leadership team.

Q: Did you review any scientific studies about the effectiveness of masks and social distancing in curbing the spread of COVID?

A: I did. There was a lot out there on that.

Q: And did you rely upon those studies in giving advice to the executive leadership team?

A: Yes. It was part of the conversation. All of the alternatives were a part of the conversation.

(Willis depo. p. 47:11-20.)[1]

Q: Same question or similar question. Did you review any scientific studies that stated that vaccination was a better alternative than masking and social distancing?

A: I did.

Q: And did you rely upon those studies in giving advice to the executive leadership team?

A: In conjunction with the data available.

(Willis depo. p. 49:2-10.)

However, when pressed for specific details of these scientific studies, Dr. Willis could not provide any details, even though she allegedly had re-read some of the studies within the past 30 days, presumably in preparation for her deposition.

Q: What were the specific studies that you relied upon?

A: I could go and pull them, but I can tell you what my sources were on a regular basis, but I can't tell you the studies off the top of my head.

\* \* \*

Q: At this time you can't give me any specific name of a study, who performed the study?

A: I read so many studies during that time period. I cannot.

(Willis depo. p. 47:21 – 48:1, p. 48:23 – 49:1.)

---

[1] The entire deposition transcript of Dr. Andrea Willis can be found at Doc. 44-12.

Q: And as you sit here today, can you tell me what those specific studies were?

A: Again, I can't quote the title because I read a lot, but I do know the New England Journal of Medicine had several studies. There were also other scientific articles and in nature I would look for things that were peer-reviewed. And, again, Johns Hopkins was a leading authority. They put out a lot of information.

Q: The scientific studies that you say that you reviewed in the summer of 2021, have you looked at any of these studies within the past 30 days?

A: I just refreshed myself on some of the information. I can tell you some things from the studies, like a lot of the studies came from European countries or other countries that were ahead of us in the curve in the pandemic. So some of their information was reviewed by scientists in our country. So, yes, within the last 30 days I did read some, but I can't quote you the titles of it.

Q: And within the past 30 days have you tried to find -- go back and find these scientific studies?

A: Oh, yes.

Q: And have you submitted those scientific studies that you reviewed, did you submit those to BlueCross's lawyers?

A: No.

(Willis depo. pp. 49:11 – 50:16.)

Despite Plaintiff's targeted discovery requests – which stemmed from sanctions against BCBST for violating the Court's Scheduling Order and Rule 26(e) – BCBST apparently never reviewed the document requests with Dr. Willis. In fact, Dr. Willis had never even seen Plaintiff's request for documents, nor had she been asked to produce any of the scientific studies upon which she supposedly relied upon in giving advice to the executive leadership team.

Q: Dr. Willis, what's being marked Exhibit 2 to your deposition is Defendant BlueCross BlueShield of Tennessee's Responses to Plaintiff's Targeted Requests for Production of Documents Concerning Dr. Andrea Willis. Have you ever seen this document before today?
I take it from your reaction, you've never seen this document before today; have you?

A: I don't recall seeing this.

> Q: Well, look at page two of this document. So on page two, the second item that we requested is, "Produce all documents, including, but not limited to, medical research, scientific studies, government publications, and industry guidelines upon which Dr. Andrea Willis relied upon in providing advice or recommendations concerning the development of defendant's public-facing COVID vaccination mandate."
>
> Have you produced copies of the scientific studies to which you just testified about to BlueCross's lawyers?
>
> A: No.
>
> Q: Have you been asked to produce such studies to BlueCross's lawyers?
>
> A: No.

(Willis depo. pp. 51:6 – 52:5.)

BCBST's actions herein have effectively obfuscated Plaintiff's ability to cross-examine Dr. Willis about how she allegedly advised the executive leadership team with respect to alternative options to mandatory vaccination. These repeated actions amount to "sand bagging." First, BCBST was late in disclosing Dr. Willis as a witness. It then failed to provide any summary of Dr. Willis' anticipated testimony until faced with a motion to exclude Dr. Willis as a witness. Even after BCBST was admonished by the Court for its violations, BCBST failed to ask Dr. Willis to produce relevant documents, despite specific discovery requests from Plaintiff. BCBST should not be allowed to circumvent multiple discovery rules to shield its witness from a vigorous pre-trial cross examination. The proper sanction for such behavior is a pre-trial order excluding Dr. Willis from referencing any scientific or medical studies that she may have relied upon in providing advice to the executive leadership team.

"In cases where a party culpably fails to produce documents in response to a discovery request, sanctions are warranted under Rule 37(d)." *Robinson v. Henderson*, 2019 WL 13217264, at *2 (W.D. Ky. May 24, 2019) (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763-64 (1980)).

*See also Fautek v. Montgomery Ward & Co.*, 96 F.R.D. 141, 145 & n.5 (N.D. Ill. 1982) (noting that "a culpable failure to produce documents in response to a request to produce can be the basis for sanctions under Fed.R.Civ.P. 37(d)" and that "dilatory and partial compliance" with a request to produce does not remove a case from the ambit of Rule 37(d)). In addition to the powers expressly conferred by the Rules of Civil Procedure, "[f]ederal courts have the inherent authority to sanction bad-faith conduct, as well as conduct that is 'tantamount to bad faith.'" *Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 257 F. Supp. 3d 867, 872 (E.D. Mich. 2017) (quoting *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011)).

In *Bluestein v. Cent. Wisconsin Anesthesiology, S.C.*, 296 F.R.D. 597, 602 (W.D. Wis. 2013), the defendant requested documents to support the plaintiff's disability discrimination claim. After missing several discovery extensions, and the intervention of a motion to compel, the plaintiff produced some responsive documents. However, the defendant challenged plaintiff's document production as incomplete. Ultimately, applying sanctions under Rule 37, the court ruled that plaintiff "may not rely on any documents other than those she has already turned over to defendant to prove her Rehabilitation Act of 1973 claim either at summary judgment or at trial." *Id.* at 602.

In *Erhart v. Bofi Holding, Inc.*, 2022 WL 84398 (S.D. Cal. Jan. 7, 2022), the plaintiff produced certain text messages in response to defendant's document request. Later, during the course of deposing two other witnesses, it was discovered that plaintiff's production of text messages were incomplete and that other responsive text messages existed. The defendant thereafter filed a motion in limine to exclude the plaintiff from introducing said text messages and any related testimony thereto. Citing both Rule 37(c)(1) and Rule 26(e), the court found that the

6

defendant's motion to exclude said evidence was justified. *Id*. at *2. The Court, however, reserved ruling until trial whether to exclude any testimony related to the excluded text messages. *Id*.

In *Erskine v. Consol. Rail Corp.*, 814 F.2d 266 (6th Cir. 1987), the Sixth Circuit granted a new trial, in part, based upon the defendant's use of undisclosed documents and testimony. During discovery, the plaintiff served interrogatories and requests for production, and defendant was granted several extensions to provide its responses. Defendant, however, did not provide in discovery the documents and testimony that it asserted at trial, even though such evidence was responsive to the plaintiff's discovery requests. The Sixth Circuit, in granting a new trial, noted that "the aggregate of defendant's conduct throughout the course of pretrial proceedings resulted in precisely the sort of "trial by ambush" that the Federal Rules were designed to prevent." *Id*. at 272. Noting that the undisclosed documents and testimony were unfavorable to plaintiff, the court sanctioned the defendant, finding that defendant "engaged in a systematic course of dilatory conduct which clearly deprived plaintiff of the opportunity to develop the facts necessary to support his case." *Id*. at 273.

Based on the foregoing, Plaintiff requests an order prohibiting Dr. Andrea Willis from referring to any scientific or medical documents upon which she relied in providing guidance to BCBST's leadership team while formulating the company's Covid vaccination mandate.

                                                        Respectfully submitted,

                                                        **MIKEL & HAMILL PLLC**

                                           By:   s/ *Doug S. Hamill*
                                                     Doug S. Hamill, BPR No. 022825
                                                     Attorney for Plaintiff
                                                     620 Lindsay Street, Suite 200
                                                     Chattanooga, TN 37403
                                                     (423) 541-5400
                                                     dhamill@mhemploymentlaw.com

**CERTIFICATE OF SERVICE**

       I hereby certify that on the 16th day of January, 2024, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

       By:   s/ *Doug S. Hamill*