IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TANJA BENTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:22-cv-00118-CEA-SKL |
| v. ) | |
| ) | Judge Charles E. Atchley, Jr. |
| ) | Magistrate Judge Susan K. Lee |
| BLUECROSS BLUESHIELD OF ) | |
| TENNESSEE, INC., ) | |
| ) | JURY DEMAND |
| ) | |
| Defendant. ) | |

## DEFENDANT BLUECROSS BLUESHIELD OF TENNESSEE INC.'S MOTION IN LIMINE NO. 1 — TO EXCLUDE PLAINTIFF'S TESTIMONY QUANTIFYING THE TIME SHE SPENT WORKING DIRECTLY WITH CLIENTS

Defendant BlueCross BlueShield of Tennessee, Inc. ("Defendant"), by and through its undersigned attorneys, hereby moves in limine to exclude Plaintiff Tanja Benton's ("Plaintiff's") testimony quantifying the amount of time she spent working with third parties in-person. The Court should exclude the testimony pursuant to Federal Rule of Evidence 403 because the evidence's tendency to mislead the jury substantially outweighs its probative value.

### I. LEGAL STANDARD

A district court's authority to rule on an evidentiary motion in limine comes from its "inherent authority to manage the course of trials," rather than a specific provision of the Federal Rules of Evidence or the Federal Rules of Civil Procedure. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citation omitted). Accordingly, a district court's decision to grant or deny a motion in limine "is purely discretionary." *United States v. Certain Land Situated in Detroit*, 547 F. Supp. 680, 681 (E.D. Mich. 1982). The function of a motion in limine is to bar evidence that is "clearly inadmissible for any purpose," and in this vein, a district court has authority to exclude evidence

only when it is "clearly inadmissible on all potential grounds." *Contract Mgmt., Inc. v. Babcock & Wilcox Tech. Servs. Y-12, LLC*, No. 3:10-CV-110, 2012 U.S. Dist. LEXIS 102854, 2012 WL 2529214, at *1 (E.D. Tenn. June 29, 2012) (quoting *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846–47 (N.D. Ohio 2004)). "Unless evidence meets this high standard," a district court will not exclude evidence in limine. *Id.* (quoting *Ind. Ins. Co.*, 326 F. Supp. 2d at 846). A party moving for a motion in limine has the burden of meeting this high standard. *Smith v. Highland Park Ruritan Club*, No. 3:06-CV-351, 2008 U.S. Dist. LEXIS 50002, 2008 WL 2669107, at *3 (E.D. Tenn. June 27, 2008).

## II. ARGUMENT

In framing her case, Plaintiff will likely attempt to provide testimony quantifying the percentage of her working hours spent interfacing with Defendant's clients, an allegation which she has repeatedly highlighted throughout this litigation. (*See, e.g.*, Memo. in support of Mot. Summ. J. at 3, Docket Entry ("D.E.") 41) ("Plaintiff's job rarely involved direct interaction with clients. In fact, approximately one percent (18 hours) of her total annual working hours (2,080 hours)."); (Pl.'s Dep. at 129–130, Ex. 1 to Pl.'s Mot. Summ. J., D.E. 40-1); (Compl. ¶ 8, D.E. 1). The testimony should be excluded, as it has limited probative value but high likelihood of confusing the jury.

Pursuant to Federal Rule of Evidence 403, otherwise relevant evidence should be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." As a threshold matter, for the testimony to have probative value, it must be relevant—it must make a fact in consequence more or less likely to be true. *See* FRE 401. Thus, the probative value of the testimony depends on its relevance to any element(s) of Plaintiff's claims or Defendant's defenses at issue.

2

In order to establish a prima facie case, Plaintiff must prove: "(1) [s]he holds a sincere religious belief that conflicts with an employment requirement; (2) [s]he has informed the employer about the conflicts; and (3) [s]he was discharged or disciplined for failing to comply with the conflicting employment requirement." *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007) (quoting *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987). In defending against Plaintiff's claim, Defendant may either: (1) negate an element of Plaintiff's prima facie case; (2) show it offered Plaintiff a reasonable accommodation; or (3) prove that providing a reasonable accommodation would cause Defendant undue hardship. *See, e.g.*, *Crider v. Univ. of Tenn*, 492 F. App'x 609, 611–612 (6th Cir. 2012). An accommodation imposes an undue hardship if the burden of the accommodation "is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 143 S. Ct. 2279, 2294 (2023).

The amount of time that Plaintiff spent working in-person with clients has no relevance to any of the elements of her prima facie case. The evidence has no bearing on the first two elements of Plaintiff's prima facie case—the sincerity of her religious beliefs or Defendant's knowledge thereof. Nor does it have any relevance to the third element of Plaintiff's prima facie case; Plaintiff admits that, as of August 27, 2021, vaccination against COVID-19 was a requirement of Plaintiff's employment, and that Plaintiff's employment ended because of her failure to comply with the requirement. (*See* Compl. ¶¶ 15, 25) ("On August 27, 2021, BCBST advised Plaintiff that she would be required to be fully vaccinated for COVID-19 as a condition of her continued employment. . . . Effective November 4, 2021, BCBST terminated Plaintiff's employment because of her failure to comply with the COVID-19 vaccine mandate.").

Accordingly, to the extent the testimony could have any probative value, it would be probative of Defendant's defenses. Plaintiff may try to introduce the testimony to attempt to prove

3

that Defendant could have offered her reasonable accommodations by removing her in-person responsibilities without suffering undue hardship (as the time spent working with clients in person was purportedly minimal). Defendant's undue hardship defense concerns the centrality of Plaintiff's in-person presentations to clients to Defendant's overall business. Testimony on the subject is, no doubt, relevant. But use of statistics—quantifying the *amount* of time spent with clients—is not probative. Whether in-person interaction was of such importance to Defendant's overall business requires a qualitative judgment. ***Quantitative data has not probative value to the jury in rendering a qualitative judgment***. And use of quantitative data to prove a qualitative fact presents substantial risk of misleading the jury.

Statistical evidence is often viewed skeptically, given the weight juries tend to assign to statistics because such evidence appears authoritative and highly persuasive. *See* Wright and Miller, Federal Practice and Procedure § 5217.1 ("Although sometimes jurors need the assistance of experts, some forms of expertise seem unhelpful. The writers urge the courts to use Rule 403 against such testimony. They single out statistical evidence for such scrutiny."). This is particularly true where the statistics are presented without context that demonstrates their value to the jury. *See, e.g.*, *Freund v. Westlake Import Motors*, No. 94 C 2024, 1998 U.S. Dist. LEXIS 2486, at *14–15 (N.D. Ill. Feb. 25, 1998) ("None of these pieces of statistical evidence sheds light on whether Defendant terminated Plaintiff with discriminatory intent . . . . presentation of statistical evidence without . . . foundation would be unfairly prejudicial to Defendant. . . . the Court finds Plaintiff's evidence is inadmissible pursuant to F.R.E. 403.").

The risk is acute in discrimination cases, where courts regularly exclude statistics plaintiffs offer in their attempts to prove discrimination, as the statistics often lack proper foundation and, as a result, are likely to confuse the jury. *See, e.g.*, *United States v. Holloway*, 29 F. Supp. 2d 435,

440–41 (M.D. Tenn. 1998) ("At first blush, these statistics appear to be very alarming, indicating that 60% of whites reviewed have been authorized for capital prosecution while only 18% of blacks reviewed have been selected to face the death penalty. Presumably, Holloway's defense team would attempt to use this information to argue that Holloway has been treated differently than similarly situated black defendants. The statistics, however, are misleading."); *Eid. v. Saint-Gobain Abrasives, Inc.*, No. 06-12392, 2008 U.S. Dist. LEXIS 122048, at *6 (E.D. Mich. May 16, 2008) ("The EEO-1 report contains statistical data concerning the racial composition of Defendant's workforce. Specifically, the report shows a virtual absence of minority employees. Defendant argues that this evidence should be excluded, as well as any arguments based on these statistics, because its probative value is substantially outweighed by the risk of unfair prejudice and misleading the jury. The Court agrees."). And, in those cases, even poorly-applied statistics have more probative value than they do here, as they are offered to quantify—through empirical evidence—the employer's discrimination based upon the demographic makeup of its employee base, but the statistics are nevertheless generally excluded. *Cf. Maseru v. Univ. of Cin.*, No. 1:18-cv-106, 2022 U.S. Dist. LEXIS at *7–8 (S.D. Ohio Oct. 13, 2022) (excluding statistical evidence because the cases "rises and falls on hiring practices" and not demographic data from which inferences could have been made). Here, Plaintiff seeks to use statistical evidence that is entirely unmoored from a fact in consequence, attempting to minimize the <u>value</u> of Plaintiff's in-person presentations to clients by highlighting the relative time she spent presenting to clients over the course of the year. The statistics do not prove that fact, as time spent on a particular task does not have any relevance to its importance. But statistical evidence may mislead a jury into minimizing testimony qualitatively describing the importance of Plaintiff's in-person presentations.

5

Consider, for example, a sports analogy. Peyton Manning, famed University of Tennessee and NFL quarterback, likely spent less than 1% of his working hours as a professional football player in game action—spending the rest in practice, studying film and the playbook, in team meetings, receiving treatment, making public appearances, etc.—but playing the game was, of course, the most important part of his job. Consider how a court would analyze Peyton Manning's request for a religious accommodation to exempt him from playing in games on Sundays. Not only is the fact that only 1% of his work involved playing games on Sundays not probative of whether the Indianapolis Colts could reasonably accommodate his request for a Sunday exemption, but the statistic would substantially risk misleading the jury to focus on how he spent the majority of his time, and not which time spent was of major importance to the Colts. The same analytical framework applies here.

Given that the amount of time spent on a particular task does not demonstrate its importance, Plaintiff's attempts to quantify her time working in-person with clients has little to no probative value to Defendant's defenses. The use of statistics, however, is often regarded as likely to confuse juries because the data is often viewed as persuasive and authoritative. The risk is inherent to the persuasive power and imprimatur of authority of statistics, and the risk therefore could not be mitigated by a limiting instruction. Because the risk of confusing the jury substantially outweighs the probative value of the evidence, any such testimony should be excluded.

Dated this 16th day of January, 2024.

/s/ Robert E. Boston
Robert E. Boston (TN BPR No. 009744)

6

#237968302_v2
Case 1:22-cv-00118-CEA-SKL   Document 55   Filed 01/16/24   Page 6 of 8   PageID #: 1372

Joshua T. Wood (TN BPR No. 035395)
HOLLAND & KNIGHT LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
bob.boston@hklaw.com
josh.wood@hklaw.com
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

       I hereby certify that on January 16, 2024, a copy of the foregoing document was served via the Court's electronic filing system.

Douglas S. Hamill
Mikel & Hamill PLLC
620 Lindsey Street, Suite 200
Chattanooga, TN 37403
423-541-5400
Email: dhamill@mhemploymentlaw.com

                                                /s/ Robert E. Boston
                                                  Robert E. Boston