UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| TANJA BENTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:22-cv-00118-CEA-SKL |
| BLUECROSS BLUESHIELD OF TENNESSEE, INC., | ) | |
| Defendant. | ) | |

## **RESPONSE TO DEFENDANT'S MOTION IN LIMINE NO. 1**

Plaintiff opposes Defendant's Motion in Limine No. 1 to exclude Plaintiff's testimony quantifying the amount of time she spent directly interacting with clients. Such evidence is highly relevant and does not have the tendency to mislead the jury.

Plaintiff's job primarily involved data analytics – tracking and forecasting trends for BCBST clients' group health insurance employment plans. (Pl. depo. p. 14.)[1] She normally handled data analytics for 10-12 clients. (McPherson depo. p. 44.)[2] BCBST assigned an Account Executive (not Plaintiff) to each client who served as the "face" of BCBST, or main contact person, to each client. (Id. at 52-53.) Plaintiff's job rarely involved direct interaction with clients. Client communications were normally filtered to and from Plaintiff through the Account Executive. (Id. at 49.) The only direct interaction Plaintiff had with clients was once per year at client annual meetings. (McPherson depo. p. 55; Pl. depo. p. 56.) Annual client meetings normally lasted 1.5 hours. (McPherson depo. p. 57.) Plaintiff did not solely perform client work throughout the year; she had other general responsibilities geared toward BCBST's internal processes, such as data validation. (Id. at 48, 50.)

---

[1] Plaintiff's deposition transcript can be found at Doc. 44-4.
[2] The deposition transcript of Mike McPherson can be found at Doc. 44-3.

With respect to the company's Covid vaccine mandate, BCBST categorized Plaintiff's job as "public facing" supposedly because of her interaction with third-party clients. (Doc. 40-6.) When Plaintiff sought a religious accommodation to the public facing Covid vaccine mandate in September 2021, she proposed to continue directly interacting with clients remotely as she had been doing over the past 18 months. (Doc. 40-12.) Direct third-party client interaction was the only "public facing" component of Plaintiff's job. This fact is not in dispute. And for 18 months, since March 2020, Plaintiff had been directly interacting with clients at their annual meetings via remote means (rather than in-person) without any complaints from clients as to the quality of Plaintiff's presentations. (McPherson depo. pp. 59-60, 134-35.)

BCBST seeks to exclude Plaintiff's testimony that only one percent (1%) of her total annual working hours involved direct third-party client interaction. BCBST admits that this testimony is relevant because it goes to the heart of this controversy, i.e., whether allowing Plaintiff to interact remotely with her clients would constitute an undue hardship. This testimony establishes that only a small fraction of Plaintiff's overall job duties and work time would even be at play in allowing this accommodation. Such evidence is certainly a factor for the jury to consider in determining whether Plaintiff's proposed accommodation was reasonable, and in turn, would not constitute an undue hardship.

Rather than arguing against the evidence's relevance, BCBST contends that this evidence should be excluded under Rule 403. In support of its argument, BCBST cites cases addressing the use of statistics as circumstantial evidence offered to prove an employer's intent or motive to discriminate against a protected class of individuals. But Plaintiff is not using statistical evidence to prove BCBST's intent or motive to discriminate. Plaintiff is simply describing an obvious fact based upon her personal knowledge. When asked in her deposition how she arrived at the one percent

figure, Plaintiff explained that she had 12 clients with whom she each directly interacted for 1.5 hours every year. (Pl. depo. p. 129.) Multiplying 12 clients by 1.5 hours/each would be a total of 18 hours. She then divided that number by her total annual working hours of 2,080 hours, based on a 40-hour workweek. (Id. at 130.) Dividing 2,080 hours by 18 hours results in just less than one percent (1%) of her total annual working hours. The "statistics" that BCBST wishes to exclude is merely simple math. Moreover, the one-percent figure is not even disputed. Plaintiff's supervisor, Mike McPherson, could not dispute the fact that Plaintiff spent one percent of her total annual work time directly interacting with clients. (McPherson depo. pp. 86-87.)

In summary, the one-percent testimony will not confuse the jury. It is important evidence that the jury can use in determining whether Plaintiff's proposed accommodation was reasonable, and in turn, whether the proposed accommodation constituted an undue hardship. BCBST's argument that the quality – rather than the quantity – of Plaintiff's time spent directly interacting with clients is really a separate argument directed at other evidence. Plaintiff will present evidence that the quality of her remote interactions with clients was just as good as the quality of her in-person client interactions. She will present evidence that the *effectiveness* of her communications with clients, rather than the *mode* of her communications, was the most important element of her client interactions. It is immaterial whether Plaintiff communicated in-person versus remotely with her clients. So long as her communications were effectively received by the clients, she satisfied her role. The Peyton Manning analogy does not support BCBST's argument. The mode of Plaintiff's client communications is more akin to the quarterback's decision to stay in the pocket or roll out to the left or right before throwing a pass. So long as the quarterback can throw touchdown passes, the decision to stay in the pocket or roll to either direction is immaterial.

3

Respectfully submitted,

**MIKEL & HAMILL PLLC**

By: s/ *Doug S. Hamill*
 Doug S. Hamill, BPR No. 022825
 Attorney for Plaintiff
 620 Lindsay Street, Suite 200
 Chattanooga, TN 37403
 (423) 541-5400
 dhamill@mhemploymentlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of January, 2024, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

By: s/ *Doug S. Hamill*