UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TANJA BENTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-00118-CEA-SKL |
| | ) |
| BLUECROSS BLUESHIELD OF | ) |
| TENNESSEE, INC., | ) |
| | ) |
| Defendant. | ) |

## **RESPONSE TO DEFENDANT'S MOTION IN LIMINE NO. 4**

Plaintiff opposes Defendant's Motion in Limine No. 4, which seeks to exclude evidence as to Defendant's responses to other employees' accommodation requests to the Covid vaccine mandate. Defendant argues that such evidence should be excluded under Rule 403.

In this case, Plaintiff will demonstrate that Defendant pre-determined a single course of action to follow with respect to any employee who requested an accommodation to its Covid vaccine mandate, whether the request was based on religious grounds (as was Plaintiff) or disability grounds. Before receiving any accommodation requests, Defendant's Legal and HR team formulated a procedure for handling all Covid vaccine accommodation requests. Significantly, the new procedure stated that, "As a general matter, the Company views requests for an accommodation in the form of maintaining current job functions . . . but not getting fully-vaccinated is unduly burdensome to the Company." (Doc. 40-11.) This new procedure set forth the company's blanket "accommodation" that would be offered to all employees who requested an accommodation to the vaccine mandate. (Vaughn depo. pp. 77-78.)[1] The predetermined "accommodation" would

---

[1] The deposition transcript of Roy Vaughn can be found at Doc. 44-7.

temporarily remove the employee from "public-facing" duties and give the employee 30 days to either get vaccinated or find another position not subject to the vaccine mandate. (Id. at 76.)

It is important to note that when the vaccine mandate was approved by senior leadership, BCBST already had a written procedure for handling religious accommodation requests. (Doc. 40-8.) That procedure was first published in April 2019. (Doc. 40-9, BCBST's Resp. to 3rd Set Interog. #3.) Under the previous procedure, both the employee's direct supervisor and HR Business Partner were involved in determining whether to grant or deny the employee's religious accommodation. (Doc. 44-9; Gault depo.[2] pp. 30-31, 57; Shields depo.[3] pp. 48, 71-72.) With respect to the Covid vaccine mandate, however, BCBST chose not to follow the religious accommodation procedure already in place. (Gault depo. pp. 39-40.) BCBST removed the roles of the employee's direct supervisor and the HR Business Partner in determining whether to grant or deny the religious accommodation request. (Vaughn depo. p. 53; Gault depo. pp. 67, 75; Shields depo. pp. 48-50.) Instead, BCBST instructed HR Business Partners to send all religious accommodation requests to outside legal counsel, who would evaluate the requests. (Shields depo. pp. 47-48.) The HR department merely acted as a "conduit" of information between the employee requesting the accommodation and the legal department. (Gault depo. pp. 75-76.)

Not surprisingly, BCBST took a one-size-fits-all approach to each employee's accommodation request. The email from Jennifer Shields relaying to Plaintiff BCBST's alternative "accommodation" was merely a template. Shields did not author the email's contents; it was merely a template that she received from her boss, Hal Gault. (Shields depo. pp. 59, 68, 70.) Gault received this email template from outside legal counsel. (Gault depo. p. 41.) According to Shields,

---

[2] The deposition transcript of Harold Gault can be found at Doc. 44-5.
[3] The deposition transcript of Jennifer Shields Wilson can be found at Doc. 44-8.

2

all emails that she sent to employees requesting accommodations to the Covid vaccine mandate would have contained the same verbiage. (Shields depo. pp. 69-70.)

Unlike how religious accommodation requests were normally handled, BCBST's Covid vaccine accommodation decisions were made without consulting employees' direct supervisors. (Gault depo. pp. 67, 75; Shields depo. pp. 48-49, 60-61.) Employees were not allowed to engage in interactive dialogue with BCBST's decision-makers. In this case, Plaintiff's only "interactive dialogue" meeting occurred with Shields and Gault, who both admitted having no involvement in the decision to deny her religious accommodation request. (Shields depo. pp. 48-49; Gault depo. p. 36.) Even BCBST's senior leadership team did not review individual employees' accommodation requests or discuss whether to grant or deny employee Covid vaccine accommodation requests. (Vaughn depo. pp. 83-84.)[4]

Not surprisingly, BCBST denied all accommodation requests it received from employees related to the Covid vaccine mandate. BCBST received 60 accommodation requests to its Covid vaccine mandate – 44 religious accommodation requests and 16 medical accommodation requests. (Doc. 40-18, BCBST's Suppl. Resp. 2nd Set Interog. #1-2.) For all 60 accommodation requests made, BCBST refused to allow the employee to continue working in his or her current role without receiving the Covid vaccine. (Id. – Interog. #3.)

In this motion, BCBST seeks to exclude evidence that it applied a one-size-fits-all approach to employee accommodation requests. BCBST urges the Court to exclude such evidence under Rule 403. This argument is without merit.

Title VII requires an employer to accommodate an employee's religious beliefs, unless the employer demonstrates that it is unable to reasonably accommodate an employee's religious

---

[4] The deposition transcript of Roy Vaughn can be found at Doc. 44-7.

observance or practice without undue hardship on the conduct of the employer's business. 42 U.S.C. § 2000e(j). The Sixth Circuit has long held that an employer's obligation to reasonably accommodate an employee's religious beliefs must involve an individualized assessment of the employee's unique situation. "The reasonableness of an employer's attempt at accommodation cannot be determined in a vacuum. Instead, it must be determined on a case-by-case basis; what may be a reasonable accommodation for one employee may not be reasonable for another." *Smith v. Pyro Mining Co.,* 827 F.2d 1081, 1085 (6th Cir. 1987). The Sixth Circuit further clarified the individual assessment component by stating, "The term 'reasonable accommodation' is a relative term and cannot be given a hard and fast meaning. Each case involving such a determination necessarily depends upon its own facts and circumstances, and comes down to a determination of 'reasonableness' under the unique circumstances of the individual employer-employee relationship." *Smith*, 827 F.2d at 1085 (citing *Redmond v. GAF Corp.*, 574 F.2d 897, 902-03 (7th Cir. 1978)). The individualized assessment involves an interactive process between the employer and the employee requesting the religious accommodation. See *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (noting that "bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business").

Evidence that BCBST applied a one-size-fits-all approach to every employee requesting a religious or disability accommodation is highly relevant to whether the company's offered accommodation was reasonable. Moreover, that BCBST pre-determined its decision to deny all employee accommodation requests and offer a one-size-fits-all proposal is relevant evidence that BCBST ignored its duty to make individualized assessments and to engage in bilateral cooperation with each employee (including Plaintiff) to consider all accommodation options.

4

The "one-size-fits-all" evidence is also relevant to the issue of punitive damages. On paper, BCBST claimed that "[w]hen an employee requests a religious or medical accommodation to the Covid-19 vaccination mandate, the Company, led by HR and Legal, will participate in the interactive process with the employee as the Company does with every request for an accommodation to a job requirement." (Doc. 40-11.) Despite claiming that it would participate in an interactive process – as the law requires – BCBST made its accommodation decisions without any interactive dialogue with employees. In fact, BCBST decided exactly what specific accommodation it would offer all employees weeks before it received the first employee accommodation request. Moreover, the evidence will show that BCBST chose to bypass its existing written procedure for handling religious accommodation requests so as to eliminate any input or decision-making from the employee's immediate supervisor or first-line HR Business Partner, who would have relevant information about the employee's unique employment circumstances.

The evidence will show that BCBST uniformly denied every employee accommodation request and applied a one-size-fits-all gameplan without considering any input from employees, including Plaintiff. Such evidence demonstrates, at the very least, that BCBST showed a reckless disregard to the federally protected rights of its workforce, including Plaintiff and others who raised religious and disability objections to the Covid vaccination mandate.

Expert statistical evidence is not necessary. Evidence that all accommodation requests were denied – when supported with evidence that accommodation decisions were pre-determined, no individualized assessments were made regarding the unique circumstances of each employee, and that communications from HR to employees were in the form of templates supplied by the Legal

5

Case 1:22-cv-00118-CEA-SKL   Document 63   Filed 01/23/24   Page 5 of 6   PageID #: 1410

department – allows the jury to determine that BCBST implemented a one-size-fits-all approach in either an intentional violation of the law or at least a reckless disregard of the law.

Finally, BCBST argues in the alternative that this evidence should only be admitted during a bifurcated punitive damages stage of trial. That argument misses the mark. The "one-size-fits-all" evidence would be presented at the liability phase of the trial, not at the phase of the trial where the jury determines the amount of punitive damages to be awarded. As stated previously, this evidence is relevant to the issue of whether BCBST offered a reasonable accommodation to Plaintiff. Furthermore, the evidence is also relevant in assisting the jury to determine whether BCBST acted with malice or with reckless disregard to Plaintiff's federally protected rights. While that issue pertains to punitive damages, it would be part of the liability phase of the trial – i.e., whether punitive damages should be assessed, but not the amount of punitive damages to be awarded.

Respectfully submitted,

**MIKEL & HAMILL PLLC**

By: s/ *Doug S. Hamill*
Doug S. Hamill, BPR No. 022825
Attorney for Plaintiff
620 Lindsay Street, Suite 200
Chattanooga, TN 37403
(423) 541-5400
dhamill@mhemploymentlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of January, 2024, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

By: s/ *Doug S. Hamill*