UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

TANJA BENTON,                          )
                                       )
*Plaintiff*,                           )
                                       )        Case No. 1:22-cv-118
v.                                     )
                                       )        Judge Atchley
BLUECROSS BLUESHIELD OF                )
TENNESSEE, INC.,                       )        Magistrate Judge Lee
                                       )
*Defendant*.                           )

## ORDER

Before the Court are Plaintiff Tanja Benton's Motion for Summary Judgment [Doc. 40] and Defendant BlueCross BlueShield of Tennessee's ("BCBS") Motion for Leave to File Supplement [Doc. 48] which the Court construes as a surreply. As explained below, Defendant BCBS will be permitted to file their surreply supplementing one of their exhibits [Doc. 44-9] filed in response to Plaintiff's Motion for Summary Judgment, and Plaintiff's Motion for Summary Judgment will be denied as a fact dispute exists that must be determined by the jury.

## I.    FACTUAL BACKGROUND

This lawsuit arises from Plaintiff's involuntary termination of employment at BCBS where she worked as a Bio Statistical Research Scientist. [Doc. 40-1 at 4]. Plaintiff's job primarily involved data analytics for BCBS. [Doc. 40-1 at 5]. Beginning in March 2020, due to the COVID-19 pandemic, Plaintiff and her team were instructed to work entirely remotely. [Doc. 40-2 at 9-10]. This period of remote work extended through September 2021. [Doc. 40-2 at 11].

As part of their return to office strategy, BCBS developed a vaccine mandate in Summer 2021. [Doc. 40-4 at 5-6]. BCBS drew up a list of employees subject to the mandate which included Plaintiff. [Doc. 40-7 at 7-8]. Simultaneously, BCBS crafted and rolled out what was effectively a

blanket accommodation protocol that would provide noncompliant employees with a 30-day period in which to either receive vaccination or find another position not subject to the mandate. [Doc. 40-4 at 8].

On September 15, 2021, Plaintiff submitted her official religious accommodation request. [Doc. 40-1 at 20]. In her request, Plaintiff objected to receiving the vaccine, claiming that receiving it would be a "defiling influence to [her] body" and that it would be at odds with her "sincerely held religious beliefs and faith in God." [Doc. 40-12 at 2]. Plaintiff's original request was denied, and she was given 30 days to either comply with the mandate or find another position not subject to the mandate. [Doc. 40-13]. Plaintiff protested the accommodation, but ultimately accepted it. [Doc. 40-14]. In the end, Plaintiff did not receive the vaccine and did not find a new position at BCBS that was not subject to the mandate, resulting in her termination on November 4, 2021. [Doc. 40-16].

Plaintiff filed the instant suit on May 16, 2022, alleging that BCBS violated Title VII and the Tennessee Human Rights Act in terminating her employment due to her claimed religious objection to complying with the BCBS vaccine mandate. [Doc. 1]. Plaintiff moved for summary judgment on October 4, 2023, asserting *inter alia* that she has demonstrated an undisputed prima facie case of employment discrimination. [Doc. 41]. Defendant BCBS responded disputing Plaintiff's prima facie case on multiple grounds, and Plaintiff replied in further support. [Docs. 44 & 45]. On December 6, 2023, Defendant moved to supplement their Response due to Plaintiff's objection to the consideration at summary judgment of an alleged instant message chain disputing

the credibility of Plaintiff's claimed religious beliefs.[1] [Docs. 48 & 49]. All issues have been fully briefed, and the Court is prepared to rule.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 instructs the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material fact must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1). When ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant

---

[1] The document in question is a purported reproduction of an instant message conversation between a legal analyst employee of BCBS, Sandra Faulknor, and Plaintiff's sister-in-law, Lynn Benton, who was also employed by BCBS during the relevant time period. [Doc. 44-9].

3

has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56). The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475-76 (6th Cir. 2010). A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374. If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## III.    ANALYSIS

Plaintiff argued for the first time in her reply brief that the statements of non-party Lynn Benton should be barred from consideration at the summary judgment stage. [Doc. 45 at 1-2]. Defendant filed a Motion for Leave to File a Supplement [Docs. 48 & 49] arguing that the statements in question are indeed appropriate to consider at the summary judgment stage under various legal theories and case precedent in the Sixth Circuit. Because the statements in question directly impact the Court's analysis as to whether a factual dispute exists, the Court will first determine if the challenged statements are appropriate to consider before conducting the summary judgment analysis. For the reasons explained below, Defendant's Motion for Leave to File a Supplement [Doc. 48] will be granted, and the contested instant message chain [Doc. 44-9] is appropriate to consider at this stage.

### A. Defendant's Request to File Supplemental Response

In their Response, Defendant filed a reproduction of an alleged instant messaging conversation between Lynn Benton and Sandy Faulknor disputing the sincerity of Plaintiff's religious beliefs. [Doc. 44-9]. At the time, Defendant did not file an affidavit or declaration verifying the authenticity of that collection of statements, believing such an attachment was procedurally unnecessary at this stage of the case. [Doc. 49 at 2-5]. Plaintiff opposed the consideration of these unsworn statements in her Reply brief, arguing both that it constitutes inadmissible hearsay not contained in a format authorized by Rule 56, and that Lynn Benton's statements must not be considered because she was not disclosed as a witness on Defendant's initial disclosures or witness list. [Doc. 45 at 2].

Plaintiff asserts "[t]he Court must disregard the Benton-Faulknor instant message chain" for a variety of reasons, including her reliance on various pre-2010 case decisions and her assertion that the instant message chain is inadmissible as hearsay. [Doc. 45 at 2]. Plaintiff is mistaken. When read alongside the 2010 advisory committee notes, Rule 56 no longer draws a clear distinction between authenticated and unauthenticated evidence for purposes of summary judgment. *Mangum v. Repp*, 674 F.App'x. 531, 537 (6th Cir. 2017). Given the Sixth Circuit's commentary in *Mangum*, Defendant's failure to authenticate the Benton-Faulknor instant message chain is understandable, and even if Defendant had not filed their Motion to Supplement, would not be procedurally fatal. The Court declines to disregard the reproduced instant message chain on these grounds.

Similarly, the Court declines to disregard the instant message chain on hearsay grounds. Case precedent in the Sixth Circuit supports consideration of hearsay evidence at the summary judgment stage if the party offering the hearsay statement can present the evidence in an admissible

5

form at trial. *See Mangum* at 537; *Ferrell v. Suncrest Home Health of E. Tenn.*, 2018 WL 7964535 (M.D. Tenn. Sept. 26, 2018) ("While it is true that Ms. Turner's statement about what Dr. Todd's employee told her appears to be hearsay, the challenged statement could be presented at trial by Plaintiff, by calling Dr. Todd's employee as a witness."). Defendant represents that they intend to call Lynn Benton as an impeachment witness at trial testifying to her own recorded statements. [Doc. 49 at 2]. A witness testifying to their own prior statements would be admissible, and no longer excluded as hearsay. Accordingly, the Court declines to disregard the instant message chain on these grounds as well.

Regarding Plaintiff's contention that the instant message chain be excluded due to non-disclosure of potential witness Lynn Benton, she is mistaken there as well. Generally, Rule 26 does not require parties to disclose evidence or witnesses that are intended to be used solely for impeachment purposes prior to this stage of a case. Fed. R. Civ. P. 26. Additionally, the Sixth Circuit has affirmatively stated that impeachment witness evidence is permissible to consider in denying a motion for summary judgement. *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013) ("[I]f the credibility of the movant's witnesses is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied and the case allowed to proceed to trial…").

The federal court preference for resolving cases on substance rather than technicality favors this outcome as well. It would be prejudicial to non-movants to preclude them from offering potential impeachment evidence at the summary judgment stage, particularly when that evidence is aimed at questions of movant's credibility, here the sincerity of Plaintiff's religious belief, that are traditionally reserved for a jury to determine.

6

For the reasons outlined above, it is appropriate for the Court to consider Defendant's offered instant message chain disputing Plaintiff's purported religious beliefs in resolving the Motion for Summary Judgment.

**B. Sincerely Held Religious Belief**

Having determined that the instant message chain can be properly considered at this stage, the Court now turns to Plaintiff's Motion for Summary Judgment.

"Title VII makes it unlawful for an employer to 'discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…religion[.]'" *Cooper v Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994) (quoting 42 U.S.C. § 2000e-2(a)).[2] A religious accommodation claim begins with determining whether a plaintiff has established a prima facie case of religious discrimination. *Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 516 (6th Cir. 2002). To establish a prima facie case, a plaintiff must demonstrate that 1) they hold a sincere religious belief that conflicts with an employment requirement, 2) they have informed the employer about the conflicts, and 3) they were discharged or disciplined for failing to comply with the conflicting employment requirement. *Id*. Upon a showing of a prima facie case, the burden shifts to the defendant to show that it couldn't reasonably accommodate the employee without suffering undue hardship. *Id*. A genuine factual dispute as to any of the above factors precludes a grant of summary judgment.

Here, Plaintiff asserts that her religion is Christianity. [Doc. 41 at 11]. The record reflects that while not identifying with a specific Christian denomination or attending any church congregation, Plaintiff claims to read the Bible and has attended Bible studies before. [Docs. 40-1

_____

[2] Plaintiff notes, and Defendant does not dispute, that her parallel state law religious accommodation claim under the Tennessee Human Rights Act is analyzed under the same framework as a Title VII religious discrimination claim. *See Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 213 F. Supp. 3d 951, 959 (E.D. Tenn. 2016). Accordingly, the result of the Court's analysis of the Title VII claim applies to both the federal and state law claims.

7

at 7-8 & 40-19 at 3]. Plaintiff asserts that her objection to receiving the vaccine mandated by BCBS stems from her belief that it was developed in connection with aborted fetal cell lines – making receiving the vaccine untenable with her religious views on abortion. [Docs. 40-1 at 17, 30-32 & 40-12 at 2]. Plaintiff contends that these beliefs satisfy the first factor required to show a prima facia case of religious discrimination.

Defendant disagrees. "The analysis of any religious accommodation case begins with the question of whether the employee has stated a prima facie case of religious discrimination." *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987). [Doc. 44 at 8]. If any element of the plaintiff's prima facie case is disputed at summary judgment, the court must deny summary judgment. *Cicero v. Borg-Warner Auto, Inc.*, 280 F.3d 579, 587 (6th Cir. 2002) ("If the parties dispute the facts establishing a prima facie case, however, a question of fact remains for the fact finder to decide.").

Determining the sincerity of a plaintiff's purported religious belief is necessarily subjective and "[s]ummary judgment is seldom appropriate." *EEOC v. Publix Super Mkts.*, 481 F. Supp. 3d 684, 699 (M.D. Tenn. 2020). Here, Defendant disputes Plaintiff's purported sincere religious beliefs. [Doc. 44 at 10]. Citing the previously contested instant message chain between Lynn Benton and Sandra Faulknor [Doc. 44-9], BCBS presents evidence supporting their dispute. The instant message chain contains statements from Lynn Benton asserting that Plaintiff's claimed "deeply held religious beliefs' couldn't be further from the truth." [Doc. 44-9]. Further, Lynn Benton's messages state "[m]y brother is actually an atheist and T [Tanja] barely believes anything. [She believes] Christmas is 'santa's birthday'". *Id*. Ms. Benton concludes by saying "I won't support them out and out lying…I support people who hold those beliefs, but it makes them

look bad when people like them [her brother and Tanja Benton] use it [sic] as a form of deceit…lying bugs me." *Id*.

As required in any summary judgment analysis, the Court must resolve any genuine factual disputes in favor of the non-moving party. Here, BCBS has presented evidence to dispute the sincerity of Plaintiff's claimed religious beliefs. It is not for the Court to weigh competing evidence on factual disputes, and in general, "credibility issues such as the sincerity of an employee's religious belief are a 'quintessential fact question.'" *Publix Super Mkts.*, 481 F. Supp. 3d at 700. Accordingly, it would be inappropriate to resolve this dispute in favor of Plaintiff – such determination would require the Court to play the role reserved for the jury.

The Court cannot determine on summary judgment whether Plaintiff's objections to the BCBS vaccine mandate were founded upon sincerely held religious beliefs. A factual dispute exists as to Plaintiff's sincerely held religious beliefs, and that dispute must be resolved by a jury, not the Court. Accordingly, Plaintiff's motion must be denied.

## IV.     CONCLUSION

As explained above, while faced with an unusual set of circumstances regarding Defendant's submitted evidentiary documents, the disputed instant message chain [Doc. 44-9] is properly considered at the summary judgment stage. Accordingly, Defendant's Motion to Supplement [Doc. 48] is **GRANTED**. Because Defendant has provided evidence that supports a genuine factual dispute as to Plaintiff's purported sincerely held religious beliefs underpinning her objection to the vaccine mandate, Plaintiff's Motion for Summary Judgment [Doc. 40] is **DENIED**.

**SO ORDERED.**

_/s/ Charles E. Atchley, Jr._

**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**