UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| TANJA BENTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-00118-CEA-SKL |
| | ) | |
| BLUECROSS BLUESHIELD OF | ) | |
| TENNESSEE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## JOINT PROPOSAL FOR JURY INSTRUCTIONS AND VERDICT FORM

Pursuant to the Amended Scheduling Order (Doc. 65) and E.D.TN L.R. 51.1, the parties

submit their joint proposal for jury instructions and verdict form, including any competing

instructions where there is disagreement among the parties.

Respectfully submitted,

**MIKEL & HAMILL PLLC**

By:  s/ Doug S. Hamill
    Doug S. Hamill (BPR No. 022825)
    620 Lindsay Street, Suite 200
    Chattanooga, TN 37403
    (423) 541-5400
    dhamill@mhemploymentlaw.com

    *Counsel for Plaintiff*

**HOLLAND & KNIGHT LLP**

By:  s/ Robert E. Boston
    Robert E. Boston (BPR No. 009744)
    Joshua T. Wood (BPR No. 035395)
    David J. Zeitlin (BPR No. 037664)
    511 Union Street, Suite 2700
    Nashville, TN 37219
    (615) 244-6380
    bob.boston@hklaw.com
    josh.wood@hklaw.com
    david.zeitlin@hklaw.com

    *Counsel for Defendant*

## JURY INSTRUCTION NO. 1
### (Joint Proposed)

### Prohibition Against Religious Discrimination in the Workplace

Title VII of the federal Civil Rights Act of 1964 ("Title VII") prohibits an employer from discriminating against an employee because of his or her religion.[1] One type of religious discrimination is an employer's failure to reasonably accommodate an employee's sincerely held religious beliefs.[2] When an employment requirement conflicts with an employee's sincerely held religious belief, and the employer knows of the employee's belief, the law requires that the employer accommodate the employee's religious belief, unless the employer demonstrates that it is unable to reasonably accommodate the employee's religious belief without undue hardship to the employer's business.[3]

Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not to fail or refuse to hire or discharge any individual because of such individual's religious observance and practice. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.[4]

Like federal law, Tennessee law also prohibits an employer from discriminating against an employee because of the employee's religion.[5] The duty of employers to make reasonable accommodations to the sincerely held religious beliefs of employees has been incorporated into

---

[1] 42 U.S.C. § 2000e–2(a)(1).
[2] *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629, 633 (6th Cir. 2003); *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 770 (2015).
[3] 42 U.S.C. § 2000e(j).
[4] *Abercrombie*, 575 U.S. at 775.
[5] Tenn. Code Ann. § 4-21-401(a)(1).

2

Tennessee law.[6]  A religious accommodation claim is analyzed in the same manner under both federal and state law.[7]

---

[6] *DePriest v. Puett*, 669 S.W.2d 669, 675 (Tenn. Ct. App. 1984).

[7] "Claims under the THRA are analyzed in the same manner as those under Title VII." *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 213 F. Supp. 3d 951, 959 (E.D. Tenn. 2016) (citing *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)).

## JURY INSTRUCTION NO. 2
### (Joint Proposed)

### Religious Accommodation Claim Elements

In this case, the plaintiff (Tanja Benton) claims that the defendant (BlueCross BlueShield of Tennessee) discriminated against her by failing to reasonably accommodate her sincerely held religious beliefs against Covid vaccination. To establish her claim, the plaintiff must first[8] prove by a preponderance of the evidence three elements (this is referred to as the plaintiff's *prima facie* case): (1) she holds a sincere religious belief that conflicts with an employment requirement; (2) she informed the defendant about the conflicts; and (3) she was discharged for failing to comply with the conflicting employment requirement.[9] In this case, only the first element is in dispute, *i.e.*, whether plaintiff's objection to the Covid vaccination requirement was based upon a sincerely held religious belief. The second and third elements have been met.

---

[8] "The analysis of any religious accommodation case begins with the question of whether the employee has established a *prima facie* case of religious discrimination." *EEOC v. Texas Hydraulics, Inc.*, 583 F. Supp. 2d 904, 908 (E.D. Tenn. 2008) (quoting *Smith v. Pyro Mining Co.,* 827 F.2d 1081, 1085 (6th Cir.1987)).
[9] *Virts v. Consol. Freightways Corp.,* 285 F.3d 508, 516 (6th Cir. 2002).

4

# JURY INSTRUCTION NO. 3
## (Joint Proposed)

**BlueCross's Affirmative Defenses to Elements of Plaintiff's Prima Facie Case**

Once the plaintiff has proven her *prima facie* case, the burden shifts to BlueCross to prove by a preponderance of the evidence either (1) that it offered the plaintiff a reasonable accommodation or (2) that it could not have reasonably accommodated the plaintiff's religious beliefs without undue hardship.[10]

---

[10] "Following an employee's establishment of a *prima facie* case of religious discrimination, 42 U.S.C. § 2000e(j) puts the burden on the employer to (1) conclusively rebut one or more elements of the plaintiff's *prima facie* case, (2) show that it offered a reasonable accommodation, or (3) show that it was unable reasonably to accommodate the employee's religious needs without undue hardship." *EEOC v. Robert Bosch Corp.*, 169 F. App'x 942, 944 (6th Cir. 2006). *See also Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1088-89 (6th Cir.1987) (after addressing the prima facie case, the court first determined whether the employer's accommodation was reasonable; finding that it was not, the court then determined whether alternative accommodations would have constituted an undue hardship); *Reed v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 523 F. Supp. 2d 592, 599 and fn.4 (E.D. Mich. 2007) (after the prima facie step, the court first determines whether the employer offered a religious accommodation, and if not, then the defendant must prove that it could not reasonably accommodate without undue hardship); *Collins v. Tyson Foods, Inc.*, 2023 WL 2731047, at *6 (W.D. Ky. Mar. 30, 2023) ("Once [a prima facie case is] established, the burden then shifts to the employer to show that it offered the employee a reasonable accommodation or that doing so would cause undue hardship.").

5

**JURY INSTRUCTION NO. 4**
**(Joint Proposed)**

**Definition of "Preponderance"[11]**

You have heard me instruct you that certain things must be proven by a preponderance of the evidence. The term "preponderance of the evidence" means that amount of evidence that causes you to conclude that an allegation is probably true. To prove an allegation by a preponderance of the evidence, a party must convince you that the allegation is more likely true than not true.

If the evidence on a particular issue is equally balanced, that issue has not been proven by a preponderance of the evidence and the party having the burden of proving that issue has failed. You must consider all the evidence on each issue.

---

[11] *See* Tennessee Pattern Jury Instructions (Civil) – 2.40.

**JURY INSTRUCTION NO. 5**
**(Joint Proposed)**

**Credibility of Witnesses[12]**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

---

[12] 11th Cir. Pattern Jury Instruction No. 3.4

7

**JURY INSTRUCTION NO. 6**
**(Joint Proposed)**

**The Duty to Follow Instructions – Corporate Party Involved[13]**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

---

[13] 11th Cir. Pattern Jury Instr. 3.2.2.

**JURY INSTRUCTION NO. 7**
**(Defendant's Proposed)**

**Protection of "Religious Beliefs" that are "Sincerely Held"**

Only sincerely held religious beliefs warrant protection under the law. To determine whether an activity qualifies as the kind of religious belief that merits accommodation, you should look to whether the beliefs professed by the employee are in the employee's own scheme of things, religious and, if so, whether those beliefs are sincerely held.[14]

---

[14] *EEOC v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684, 699 (M.D. Tenn. 2020).

# JURY INSTRUCTION NO. 7
## (Plaintiff's Proposed)

### Definition of "Religion" and "Sincerely Held"

For purposes of this lawsuit, the term "religion" is broadly defined to include all aspects of religious observance and practice, as well as belief.[15]  The law's protections apply whether the religious beliefs or practices in question are common or non-traditional, and regardless of whether they are recognized by any organized religion.[16]  Overlap between a religious and political view does not place it outside the scope of the law's religious protections, as long as the view is part of a comprehensive religious belief system and is not simply an isolated teaching.[17]

Only sincerely held religious beliefs warrant protection under the law.  To determine whether an activity qualifies as the kind of religious belief that merits accommodation, you should look to whether the beliefs professed by the employee are sincerely held and whether they are, in the employee's own scheme of things, religious.[18]  It should not be assumed that an employee's beliefs are insincere simply because some of his or her practices deviate from the commonly followed tenets of his or her religion, or because the employee adheres to some common practices but not others.[19]

---

[15] 42 U.S.C. § 2000e(j); *Janes v. Bardstown City Sch. Bd. of Educ.*, 1996 WL 536794 at *4 (6th Cir. Sept. 20, 1996) (religion is very broadly defined under Title VII).
[16] *EEOC Compliance Manual on Religious Discrimination* § 12–I(A)(1) (Jan. 15, 2021).
[17] *Id.*
[18] *EEOC v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684, 699 (M.D. Tenn. 2020).
[19] *EEOC Compl. Man.* § 12–I(A)(2).  *See also* 29 C.F.R. § 1605.1 (fact that religious group to which individual professes to belong may not accept such belief is not determinative).

10

**Definition of "Religion"**

Under the law, "religion" includes all aspects of religious observance and practice, as well as belief.[20] Observance, practice, or belief are protected as "religion" if they are, in the Plaintiff's own scheme of things, religious.[21] When determining if an observance, belief, or practice is religious, the following factors are often considered: First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters.[22] Second, a religion is comprehensive in nature; it consist of a belief-system as opposed to an isolated teaching.[23] Third, a religion often can be recognized by the presence of certain formal and external signs.[24] The law's protections apply whether the religious beliefs or practices in question are common or non-traditional, and regardless of whether they are recognized by any organized religion.[25]

---

[20] 42 U.S.C. § 2000e(j); *Janes v. Bardstown City Sch. Bd. of Educ.*, No. 95-5531, 1996 WL 536794 at *4 (6th Cir. Sept. 20, 1996) (religion is very broadly defined under Title VII).

[21] *United States v. Seeger*, 380 U.S. 163, 185 (1965); EEOC Compliance Manual on Religious Discrimination § 12–I(A)(1) (Jan. 15, 2021).

[22] EEOC Compliance Manual on Religious Discrimination § 12–I(A)(1) (Jan. 15, 2021) (quoting *Fallon v. Mercy Catholic Med. Ctr. of Se. Pa.*, 877 F.3d 487, 491 (3d Cir. 2017)).

[23] *Id.*

[24] *Id.*

[25] *EEOC Compliance Manual on Religious Discrimination* § 12–I(A)(1) (Jan. 15, 2021).

11

## JURY INSTRUCTION NO. 9
### (Defendant's Proposed)

**Distinguishing Political Beliefs and Personal Preferences from "Religion"**

Social, political, or economic philosophies, as well as mere personal preferences, are not religious beliefs protected by Title VII.[26] However, overlap between a religious and political belief does not place the belief outside the scope of the law's religious protections, as long as the belief is part of a comprehensive religious belief system and is not simply an isolated teaching.[27] But when a political belief or personal preference is explained in religious terms, if the belief is in-fact based on personal judgments rather than religious reasons, then the belief is not religious.[28]

The use of religious vocabulary does not necessarily elevate a personal judgment to a matter of protected religion.[29] Under the law, asserted "religious objections" based upon prayer or belief in God-given bodily autonomy that one could employ to reject any policy with which she or he personally disagrees are unprotected "isolated moral teachings" and not part of a "comprehensive system of belief about fundamental or ultimate things" that may qualify as protected religious beliefs.[30] Additionally, a belief is not necessarily protected as religious if the

---

[26] EEOC Compliance Manual on Religious Discrimination § 12–I(A)(1) (Jan. 15, 2021).

[27] *Id.*

[28] *Passarella v. Aspirus, Inc.*, No. 22-cv-287-jdp, 2023 U.S. Dist. LEXIS 40958, at *12–13 (W.D. Wisc. Mar. 9, 2023) (quoting "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, U.S. Equal Opportunity Employment Commission (July 12, 2022 update)"); *Griffin v. Mass. Dep't of Revenue*, No. 22-cv-11991, 2023 U.S. Dist. LEXIS 125845, at *16–17 (D. Mass. July 20, 2023) ("In short, it does not appear that her opposition to the COVID-19 vaccine in particular derives from a religious belief about vaccines in general, or indeed any preexisting principle of any kind. Instead, she describes her belief as a result of a personal practice of 'praying on it' when faced with difficult life decisions."); *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465–66 (M.D. Pa. 2022) ("To start, her belief that she has a 'God given right to make [her] own choices'—which, implicitly, her employer must unfailingly respect—would amount to 'a blanket privilege' and a 'limitless excuse for avoiding all unwanted . . . obligations.' Though fungible enough to cover anything that Finkbeiner trains it on, this belief 'is an 'isolated moral teaching' . . not a comprehensive system of beliefs about fundamental or ultimate matters.'") (internal footnotes and citations omitted).

[29] *Id.*

[30] *Ritter v. Lehigh Valley Health Network*, No. 22-4897, 2024 U.S. Dist. LEXIS 26883, at *11–12 (E.D. Penn. Feb. 15, 2024); *see, e.g.*, *Prida v. Option Care Enters.*, No. 5:23-cv-00905, 2023 U.S. Dist. LEXIS 190298, at *16–17 (N.D. Ohio Oct. 24, 2023) ("Prida pleads no facts to suggest that her belief in her body as God's temple is different than those previously denied Title VII protection. Like the plaintiffs in *Lawhead* and *Ulrich*, Prida's proposed

12

belief is influenced by the plaintiff's religion; the belief itself must be part of a comprehensive

religious belief system in order to be protected under the law.[31]

---

accommodation threatens to engulf every employer practice with which she disagrees. Rather than presenting a specific religious teaching that conflicts with a specific policy of her employer, Prida's request for accommodation attempts to dress up an isolated moral teaching using biblical quotes and spiritual language. The facts pleaded, if taken as true, do not support the notion that Prida's belief in the sanctity of her body is a religious belief protected under Title VII. Instead, Prida alleges largely secular beliefs in an attempt to procure a 'blanket privilege and a limitless exclude for avoiding all unwanted obligation.'") (quoting *Devore v. Univ. of Ky. Bd. of Trs.*, No. 5:22-cv-00186, 2023 U.S. Dist. LEXIS 167239, 2023 WL 6150773, at *4 (E.D. Ky. Sept 20, 2023)); *Ulrich v. Lancaster Gen. Health*, No. 22-4945, 2023 U.S. Dist. LEXIS 64750, at *14–15 (E.D. Penn. Apr. 13, 2023) ("Her citation to a 'religious faith' that her body is 'a temple of the Holy Spirit,' and assertion that this gives her the right to determine which 'medical interventions' 'comport with' this commandment, is, as in *Finkbeiner*, 'fungible enough to cover anything she trains it on.' Her reliance upon a divine 'command ... to exercise bodily autonomy,' and assertion that 'God has given [her] liberty to live according to live according to His calling,' asserts, as in Finkbeiner, a 'blanket privilege' where she alone is the arbiter for decisions which she expects her employer to 'unfailingly respect.' The *Africa* court specifically rejected this 'self-defining approach' to religion.").

[31] *Janes*, 1996 WL 536794, at *4 (finding parents' preference for religious education was not a protected religious belief).

13

## JURY INSTRUCTION NO. 10
### (Defendant's Proposed)

### Definition of "Sincerely Held"

When evaluating sincerity, your finding will depend on your assessment of the plaintiff's credibility, and whether you believe she is honest about her religious belief.[32]  Factors that might undermine an employee's credibility include, but are not limited to, whether the employee has behaved in a manner inconsistent with the professed belief; whether the accommodation sought is a particularly desirable benefit that is likely to be sought for secular reasons; whether the timing of the request renders it suspect; and whether the employer otherwise has reason to believe the accommodation is not sought for religious reasons.[33]

Specifically, in the context of COVID-19 vaccination, an employee's sincerity of belief is more likely to be credible if she shows that her religion requires her to observe certain medical limitations that include a refusal to take vaccines, or certain types of vaccines, or that her religious beliefs or principles have affected her other medical decisions in the past.[34]  If the plaintiff cannot make that showing, you may—but are not required to find—the plaintiff's professed sincerity is less credible.[35]

Evidence tending to show that an employee acted in a manner inconsistent with her professed religious beliefs is relevant to your assessment of the plaintiff's credibility, but it should not be assumed that an employee's beliefs are insincere simply because some of his or her practices

---

[32] *EEOC v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684, 699–700 (M.D. Tenn. 2020); *see also Ackerman v. Washington*, 16 F.4th 170, 181 (6th Cir. 2001) (discussing sincerity of religious belief in context of RLUIPA claim)
[33] EEOC Compl. Man. § 12–I(A)(2).
[34] *Griffin v. Mass. Dep't of Rev.*, No. 22-cv-11991-FDS, 2023 U.S. Dist. LEXIS 125845, at *16 (D. Mass. July 20, 2023).
[35] *See id.*

deviate from the commonly followed tenets of his or her religion, or because the employee adheres to some common practices but not others.[36]

---

[36] *Id.*; *see also* 29 C.F.R. § 1605.1 (fact that religious group to which individual professes to belong may not accept such belief is not determinative).

15

**JURY INSTRUCTION NO. 11[37]**
**(Joint Proposed)**

**Whether an Accommodation Is Reasonable**

If an employer offers any accommodation that is reasonable, even if the accommodation is not the plaintiff's preferred accommodation, then the employer has met its duty under the law.[38] The reasonableness of an employer's attempt at accommodation must be determined on a case-by-case basis; what may be a reasonable accommodation for one employee may not be reasonable for another.[39] An accommodation is reasonable if it removes the conflict between the employment requirement and the plaintiff's religious beliefs, unless the accommodation would cause the employee to lose a benefit of employment enjoyed by all other employees who do not share the same religious conflict.[40] [*In determining whether an accommodation offer is reasonable, the focus is on whether the accommodation preserves the employee's terms, conditions, and privileges of employment, once the employer has eliminated the religious conflict with the employer's requirements.*[41]] The employer bears the burden of proving that it offered a reasonable accommodation by a preponderance of the evidence.[42]

---

[37] Plaintiff requests the bracketed portion of the instruction be included. BCBST objects. The instruction is otherwise jointly submitted.

[38] *Crider v. Univ. of Tenn., Knoxville,* 492 F. App'x 609, 612 (6th Cir. 2012); *Smith v. Pyro Mining Co.,* 827 F.2d 1081, 1098 (6th Cir. 1987).

[39] *Smith,* 827 F.2d at 1085.

[40] *Cooper v. Oak Rubber Co.,* 15 F.3d 1375, 1379 (6th Cir. 1994).

[41] *Reed v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.,* 523 F.Supp.2d 592, 599 (E.D. Mich. 2007).

[42] "42 U.S.C. § 2000e(j) puts the burden on the employer to . . . show that it offered a reasonable accommodation." *EEOC v. Robert Bosch Corp.,* 169 F. App'x 942, 944 (6th Cir. 2006). *See also Collins v. Tyson Foods, Inc.,* 2023 WL 2731047, at *6 (W.D. Ky. Mar. 30, 2023) ("Once [a prima facie case is] established, the burden then shifts to the employer to show that it offered the employee a reasonable accommodation or that doing so would cause undue hardship.").

16

**JURY INSTRUCTION NO. 12**
**(Defendant's Proposed)**

**No Bilateral Cooperation Required if Reasonable Accommodation Offered**

The law requires affirmative action by the employer to help resolve, if possible, the conflict between the employee's religious beliefs and the employer's rule or policy. An employer cannot merely assess the reasonableness of a particular possible accommodation suggested by the employee; instead, an employer must consider other options to resolve the employee's religious conflict..[43] But where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship.[44]

---

[43] *Groff v. DeJoy*, 600 U.S. 447, 473 (2023).
[44] *Ansonia v. Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986).

17

# JURY INSTRUCTION NO. 12
## (Plaintiff's Proposed)

### Bilateral Cooperation

The law requires affirmative action by the employer to help resolve, if possible, the conflict between the employee's religious beliefs and the employer's rule or policy. An employer cannot merely assess the reasonableness of a particular possible accommodation suggested by the employee; instead, an employer must consider other options to resolve the employee's religious conflict.[45] Bilateral cooperation between the employer and employee is appropriate in searching for an acceptable religious accommodation.[46] Bilateral cooperation involves an interactive process that requires participation by both the employer and the employee, including an open dialogue between the parties.[47]

---

[45] *Groff v. DeJoy*, 600 U.S. 447, 473 (2023)

[46] *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986)

[47] *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000). *See Porter v. City of Chicago*, 700 F.3d 944, 953 (7th Cir. 2012) ("In requiring employers to 'offer reasonable accommodations,' we have encouraged 'bilateral cooperation' between the employee and employer and recognized that employers must engage in a dialogue with an employee seeking an accommodation.") (citing *Rodriguez v. City of Chi.,* 156 F.3d 771, 778 (7th Cir.1998) and *Philbrook,* 479 U.S. at 69)). *See also Mohamed v. 1st Class Staffing, LLC*, 286 F. Supp. 3d 884, 909 (S.D. Ohio 2017) (examples of not engaging in bilateral cooperation include failing to consult an employee about alternative religious accommodations or offering an accommodation in a take-it-or-leave it fashion).

18

## JURY INSTRUCTION NO. 13
## (Defendant's Proposed)

**Assistance with Obtaining Alternative Employment within Employer May Be Reasonable**

It is possible for an employer to reasonably accommodate an employee's religious beliefs by providing the employee time and resources to aid the employee in a search for alternative employment within the employer if alternative employment could eliminate the religious conflict.[48] When such opportunity for alternative employment is offered as an accommodation, the proposed accommodation is not *per se* unreasonable, even if the available positions pay substantially less than the employee's current position.[49]

---

[48] *See Bruff v. N. Miss. Health Servs.*, 244 F.3d 495, 502–504 (5th Cir. 2001); *Telfair v. Fed. Express Corp.*, 567 F. App'x 681, 684 (11th Cir. 2014); *Walden v. Ctrs. For Disease Control & Prevention*, 669 F.3d 1277, 1294 (11th Cir. 2012); *Wright v. Runyon*, 2 F.3d 214, 217 (7th Cir. 1993); *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 227 (3d Cir. 2000).

[49] *Bruff*, 244 F.3d at 502, n. 23; *Walker v. Indian River Transp. Co.*, 741 F. App'x 740, 747 (11th Cir. 2018) ("an accommodation may be reasonable even if it adversely impacts the employee to some extent."); *Horvath v. City of Leander*, No. 1:17-CV-256-RP, 2018 U.S. Dist. LEXIS 236718, at *10–11 (W.D. Tex. Oct. 10, 2018).

19

**Employee's Duty to Cooperate**

When an employer offers an accommodation that could eliminate the conflict between the requirements of employment and the employee's sincere religious beliefs, the employee has a duty to make a good-faith attempt to satisfy her or his religious needs through the means offered by the employer.[50] A reasonable accommodation need not be on the employee's terms only.[51] When the employer offers an accommodation that could—with some effort of the employee—prove workable, the employee cannot reject the employer's efforts as inadequate without making a good-faith effort to utilize the accommodation.[52] If you find that BlueCross's accommodation could have been reasonable if Plaintiff made a good-faith effort to utilize the accommodation, then BlueCross has met its obligation to provide Plaintiff a reasonable accommodation.[53]

---

[50] *Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 146 (5th Cir. 1982).

[51] *Id.*

[52] *Id.*; *see also Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1294 (11th Cir. 2012) (affirming summary judgment to employer where employee failed to "make a good faith attempt to accommodate her needs through the offered accommodation"); *Bruff v. N. Miss. Health Servs., Inc.*, 244 F.3d 495, 502 (5th Cir. 2001) (proving thirty days to find alternative employment that would not conflict with employee's religion was a reasonable accommodation); *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220 228 (3d Cir. 2000) (affirming summary judgment to employer where employee's "refusal to cooperate in attempting to find acceptable religious accommodation was unjustified").

[53] *Id.*

# JURY INSTRUCTION NO. 15
## (Defendant's Proposed)

## Reasonableness of Accommodation May Be Influenced by Unique Circumstances Then Presented from COVID

When considering potential accommodations to offer to employees, employers were legally permitted to consider whether the circumstances related to the COVID-19 pandemic created "significant difficulty" in acquiring or providing certain accommodations, considering the facts of the particular job and workplace.[54]  The reasonableness of an employer's offered accommodation should be judged by the facts as they were understood at the time and not with the benefit of 20-20 hindsight.[55]  You must assess whether BlueCross reasonably relied on the particularized facts then before it, it was not required to engage in an optimal decisional process or leave no stone unturned in a search for a reasonable accommodation.[56]

---

[54] EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, available at: https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws,  at D.10, superseded in part by *Groff v. DeJoy*, 143 S. Ct. 2289 (2023); *see also S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) (""[t]he precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement.").

[55] *See Till v. Spectrum Juvenile Justice Services*, 805 F.Supp.2d 354, 364 (2011) (citing *Michael v. Caterpillar Fin. Services Corp.*, 496 F.3d 584, 598 (6th Cir. 2007)); *Equal Employment Opportunity Commission v. JBS USA, LLC*, 339 F.Supp.3d 1135, 1192 (D. Colo. 2018) (citing *EEOC v. Flasher Co.*, 986 F.2d 1312, 1319 (10th Cir. 1992))

[56] *Tinsley v. Caterpillar Fin. Servs. Corp.*, No. 3:16-CV-01350, 2019 U.S. Dist. LEXIS 101697, at *29 (M.D. Tenn. June 18, 2019).

# JURY INSTRUCTION NO. 16[57]
## (Joint Proposed)

### Undue Hardship

An employer must accommodate an employee's religious beliefs, unless the employer is unable to reasonably accommodate an employee's religious beliefs without undue hardship on the conduct of the employer's business.[58]  For purposes of this case, the phrase "undue hardship" means substantial increased costs in relation to the conduct of the defendant's particular business.[59] In determining whether accommodating the plaintiff's religious beliefs would constitute an undue hardship, you should consider all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of the defendant.[60]

[*"Undue hardship" can encompass more than the financial burden to the employer.[61] Employers may consider intangible costs such as, for example, the loss of office efficiency or the safety risk an accommodation can pose to others;[62] the effect on the plaintiff's co-workers and resultant ramifications it has for the conduct of the employer's business;[63] damage to the employer's ability to achieve its mission;[64]or damage to the employer's public image.[65]  Whether*

---

[57] BCBST requests the bracketed portion of the instruction be included.  Plaintiff objects.  The instruction is otherwise jointly submitted.

[58] 42 U.S.C. § 2000e(j).

[59] *Groff v. DeJoy*, 600 U.S. 447, 470 (2023).

[60] *Id*. at 470-71.

[61] *Speer v. Ucor LLC*, No. 3:22-cv-426, 2023 U.S. Dist. LEXIS 198889, at *20 (E.D. Tenn. Nov. 6, 2023) ("'undue hardship' does not only refer to the economic cost of providing an accommodation.").

[62] *Id.* at *20; *Adams v. Mass Gen. Brigham Inc.*, No. 21-11686-FDS, 2023 U.S. Dist. LEXIS 174606, at *15 (D. Mass. Sept. 28, 2023).

[63] *Groff*, 600 U.S. at 472.

[64] *Ryan v. Dep't of Just.*, 950 F.2d 458, 461–62 (7th Cir. 1991); *Baz v. Walters*, 782 F.2d 701, 706–07 (7th Cir. 1986); *Devore v. Univ. of Ky. Bd. of Trs.*, No. 5:22-cv-00186-GFVT-EBA, 2023 U.S. Dist. LEXIS 167239, at *11–12 (E.D. Ky. Sept. 18, 2023).

[65] *Adams*, 2023 U.S. Dist. LEXIS 174606, at *15.

*hardship is "undue" requires you to undertake and individualized analysis of the duties and responsibilities of the plaintiff in the context of the employer's business.*[66]]

BlueCross has the burden of proving undue hardship by a preponderance of the evidence.[67]

---

[66] *Adams*, 2023 U.S. Dist. LEXIS 174606, at, at *21.
[67] *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007).

23

## JURY INSTRUCTION NO. 17
### (Defendant's Proposed)

### Undue Hardship – Essential Job Function

Exempting an employee from one of her essential job functions poses an undue hardship to the employer.[68]  Employers are entitled to some degree of discretion in determining the employee functions it deems essential to its business.[69]  Whether the asserted essential functions are, in fact, essential is a question for you to decide.  If you find that meeting with clients in person was an essential function of Plaintiff's job, and that BlueCross could not have reasonably accommodated Plaintiff in a manner that preserved her ability to meet with clients in-person, you may find that BlueCross would suffer an undue hardship by accommodating Plaintiff's asserted religious beliefs.

---

[68] *See, e.g.*, *Crider v. Univ. of Tenn.*, 492 F. App'x 609, 615 (6th Cir. 2012) (noting, in the ADA context, that the University of Tennessee "determined that 'site visits' were an essential job function of a Programs Abroad Coordinator" but reversing summary judgment because there existed a dispute of fact whether plaintiff could be reasonably accommodated); *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 113 (6th Cir. 2009) ("A retaliation claim under the ADA uses the same framework as a retaliation claim under Title VII."); *Russo v. Patchogue-Medford Sch. Dist.*, No. 22CV01569, 2024 U.S. Dist. LEXIS 6908, at *13–13 (E.D.N.Y. Jan. 12, 2024) ("'[A] reasonable accommodation can never involve the elimination of an essential function of a job,' and 'a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.'") (modifications in original) (quoting *Tafola v. Heilig*, 80 F.4th 111, 119 (2d Cir. 2023)).

[69] *See, e.g.*, *Bilinsky v. Am. Airlines, Inc.*, 928 F.3d 565, 569–70 (7th Cir. 2019), *superseded in part on other grounds as stated in*, 2019 U.S. App. LEXIS 23821 (7th Cir. June 26, 2019); *Champagne v. Servistar Corp.*, 138 F.3d 7, 14 (1st Cir. 1998) (explaining the employer "has substantial leeway in defining the essential functions" of its employees); *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1258 (11th Cir. 2007) (explaining that the employer's opinion regarding which job functions are essential is not "conclusive," but "is entitled to substantial weight in this calculus." (internal quotation marks omitted) (quoting *D'Angelo v. Congara Foods*, 422 F.3d 1220, 1230 (11th Cir. 2005)); *Squiers v. Washtenaw Cnty.*, 2023 U.S. Dist. LEXIS 122496, at *3 (E.D. Mich. July 17, 2023) (explaining that the employer-County "has discretion to establish essential job functions.").

24

**JURY INSTRUCTION NO. 18**
**(Defendant's Proposed)**

**Indefinite Telework May Pose an Undue Hardship if In-Person Functions Are Deemed Essential**

To the extent that an employer is permitting employees to telework because of COVID-19 and is choosing to excuse an employee from performing one or more essential functions, then a request—after the workplace reopens—to continue telework as a reasonable accommodation does not have to be granted if it requires continuing to excuse employees from performing an essential function.[70] The fact that an employer excused performance of one or more essential functions when it closed the workplace and enabled employees to telework for the purpose of protecting them from COVID-19, or otherwise chose to permit telework, does not mean that the employer permanently changed a job's essential functions, that telework is always a feasible accommodation, or that it does not pose an undue hardship.[71] These are fact-specific determinations for you to decide.[72]

---

[70] EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, available at: https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws, at D.15, superseded in part by Groff v. DeJoy, 143 S. Ct. 2289 (2023).
[71] *Id.*
[72] *Id.*

25

**JURY INSTRUCTION NO. 19**
**(Joint Proposed)**

**Back Pay Damages and Mitigation**

If, under the Court's instructions, you find that the defendant engaged in the discriminatory action alleged by the plaintiff, and you find that the plaintiff's damages were legally caused by the defendant's discriminatory actions, then you shall award the plaintiff the actual damages she has sustained.[73]

For wrongful loss of employment, plaintiff shall be awarded back pay damages and the present value of any lost employment benefits. Back pay is the sum of wages the plaintiff would have earned from the date of termination of employment through today's date.[74] The plaintiff has a duty to mitigate her back pay damages. Any back pay and employment benefits you award the plaintiff shall be reduced by any employment earnings and benefits the plaintiff earned or could have earned through reasonable diligence.[75] The defendant has the burden of establishing that the plaintiff failed to use reasonable diligence in mitigating damages.[76] The defendant must prove both the availability of suitable and comparable substitute employment and the lack of reasonable diligence on the part of the plaintiff.[77]

---

[73] Tennessee Pattern Jury Instructions (Civil) – 11.74
[74] *Id*.
[75] Tennessee Pattern Jury Instructions (Civil) – 11.76.
[76] *Id*.
[77] *Id*.

26

## JURY INSTRUCTION NO. 20
### (Joint Proposed)

### Compensatory Damages

In addition to back pay damages, you shall award a sum of money to compensate the plaintiff for any non-wage damages the plaintiff suffered as a legal result of the defendant's unlawful actions.[78]  This is sometimes referred to as compensatory damages.  Compensatory damages may be awarded for embarrassment, humiliation, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.[79]

The words "embarrassment" and "humiliation" are used in their everyday meaning.  Not every embarrassment and humiliation, however, is compensable.  Embarrassment and humiliation are compensable only when a reasonable person with ordinary sensibilities under the same or similar circumstances would be embarrassed and humiliated.  There is no mathematical formula for computing reasonable compensation for compensatory damages, nor is the opinion of any witness required as to the amount of such compensation.  In making an award for such damages, you must use your best judgment and establish an amount of damages that is fair and reasonable in light of the evidence before you.[80]

---

[78] Tennessee Pattern Jury Instructions (Civil) – 11.75 (modified by replacing the term "embarrassment and humiliation" with the term "non-wage damages").

[79] Tenn. Code Ann. § 4-21-313(a) (listing compensatory damages that may be awarded for violation of the THRA to include "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses").

[80] Tennessee Pattern Jury Instructions (Civil) – 11.75 (modified by using the term "compensatory damages" in place of "embarrassment and humiliation" in certain places).

27

## JURY INSTRUCTION NO. 21
### (Joint Proposed)

### Punitive Damages[81]

If you find for the Plaintiff, you may, but are not required to, assess punitive damages against the BlueCross. The purposes of punitive damages are to punish a defendant for its conduct and to serve as an example or warning to the BlueCross and others not to engage in similar conduct in the future.

To be eligible for punitive damages, the Plaintiff must prove by a preponderance of the evidence that punitive damages should be assessed against BlueCross. You may assess punitive damages only if you find that the conduct of BlueCross's managerial employees or officers was done with malice or in reckless disregard of the Plaintiff's rights. An action is with malice if a person knows that it violates the law and does it anyway. An action is in reckless disregard of the Plaintiff's rights if taken with knowledge that it may violate the law.

In determining whether an employee or officer was a managerial employee of the BlueCross, you should consider the kind of authority the BlueCross gave her or him, the amount of discretion she or he had in carrying out his job duties, and the manner in which she or he carried them out. You should not, however, award the Plaintiff punitive damages if the BlueCross proves that it made a good faith effort to implement an anti-discrimination policy.

If you decide to award punitive damages, you will not assess an amount of punitive damages at this time. You will, however, report your finding to the court.

---

[81] These instructions are taken from the Seventh Circuit Civil Jury Instructions (2017 rev.), Section 3.13, describing the jury charge for punitive damages under Title VII. See https://www.ca7.uscourts.gov/pattern-jury-instructions/7th_cir_civil_instructions.pdf (visited 1/18/2024).

## PROPOSED VERDICT FORM

We, the jury, unanimously answer the following questions.

1.  Has the plaintiff Tanja Benton proven by a preponderance of the evidence that her refusal to receive the Covid vaccination was based upon a sincerely held religious belief?

    _____ YES                    _____ NO

    *If you answered "YES", please proceed to the next question.  If you answered "NO", then your deliberations are at an end.  Please have the foreperson sign and date this form and return it to the court officer.*

2.  Has the defendant BlueCross BlueShield of Tennessee proven by a preponderance of the evidence that it offered a reasonable accommodation to the plaintiff?

    _____ YES                    _____ NO

    *If you answered "YES", then your deliberations are at an end.  Please have the foreperson sign and date this form and return it to the court officer.  If you answered "NO", please proceed to the next question.*

3.  Has the defendant BlueCross BlueShield of Tennessee proven by a preponderance of the evidence that it could not reasonably accommodate the plaintiff's religious beliefs without undue hardship?

    _____ YES                    _____ NO

    *If you answered "YES", then your deliberations are at an end.  Please have the foreperson sign and date this form and return it to the court officer.  If you answered "NO", please proceed to the next question.*

4. Under the law as given to us in the Court's instructions, we award the following damages to the plaintiff Tanja Benton:

Back pay damages:  $_____

Compensatory damages:  $_____

5. If you awarded damages of any type in response to Question 4, do you find that the plaintiff Tanja Benton has proven by a preponderance of the evidence that she is entitled to punitive damages?

_____ YES                    _____ NO

Sign and date below and alert the Court Officer that you have reached a verdict.

_____
Jury Foreperson (Print Name)

_____
Jury Foreperson (Signature)

_____
Date

30

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2024, a copy of the foregoing document was filed electronically. Notice of this filing is sent by operation of the Court's electronic filing system to below counsel of record indicated on the electronic receipt.

Doug S. Hamill
Mikel & Hamill PLLC
620 Lindsay Street, Suite 200
(423) 541-5400
dhamill@mhemploymentlaw.com

Pursuant to the Amended Scheduling Order (Doc. 65), a copy of this document was also sent to Judge Atchley's chambers' email.

*/s/ Robert E. Boston*
Counsel for Defendant