UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| TANJA BENTON, | ) | |
|---|---|---|
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 1:22-cv-118 |
| v. | ) | |
| | ) | Judge Atchley |
| BLUECROSS BLUESHIELD OF | ) | |
| TENNESSEE, INC., | ) | Magistrate Judge Lee |
| | ) | |
| *Defendant*. | ) | |

## AGREED FINAL PRETRIAL ORDER

This Court conducted a Final Pretrial Conference pursuant to Rule 16 of the Federal Rules of Civil Procedure on June 10, 2024. Doug S. Hamill appeared as counsel for the Plaintiff. Robert E. Boston, Joshua T. Wood, and David J. Zeitlin appeared as counsel for the Defendant ("BCBST"). The following action was taken:

**I. Jurisdiction**

This is an employment discrimination action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401. Jurisdiction of the Court is invoked pursuant to 29 U.S.C. § 1331. The jurisdiction of the Court is not disputed.

**II. Pleadings**

The pleadings are amended to conform to this pretrial order.

**III. General Nature of the Claims of the Parties**

    **A. Claims**

Plaintiff claims that BCBST failed to reasonably accommodate her religious beliefs against

receiving the Covid vaccination. BCBST terminated Plaintiff's employment due to non-compliance with BCBST's Covid vaccination requirement applicable to her position. The following three central issues are in dispute: (1) whether Plaintiff's objection to receiving the Covid vaccination is based upon sincerely held religious beliefs; (2) if Plaintiff objected to receiving the COVID vaccination upon sincerely held religious beliefs, whether BCBST offered a reasonable accommodation to Plaintiff; and (3) if Plaintiff objected to receiving the COVID vaccination upon a sincerely held religious belief and if BCBST did not offer a reasonable accommodation to Plaintiff, whether Plaintiff's proposed accommodation of interacting remotely with clients constitutes an undue hardship.

B. **Stipulated Facts**

1. Plaintiff's employment with BCBST began on July 8, 2005.
2. Plaintiff held the position of Biostatistical Research Scientist from July 2010 through the end of her employment with BCBST.
3. As a Biostatistical Research Scientist, Plaintiff was assigned to employer-sponsored group health plans (BCBST's "Clients") and—for many of her clients—at least once per year per Client, presented to representatives of each Client assigned to her.
4. Prior to the COVID-19 pandemic, Plaintiff almost always conducted Client presentations in-person.
5. BCBST notified Plaintiff via email on August 11, 2021, that her position would be subject to BCBST's Covid-19 vaccination requirement. BCBST further advised Plaintiff that she could submit a religious accommodation request regarding BCBST's COVID-19 vaccine requirement.

6. On August 27, 2021, BCBST notified Plaintiff that vaccination against COVID-19 would be required for her role by October 4, 2021, and again reminded Plaintiff that she could submit a religious accommodation request.

7. On or about September 15, 2021, Plaintiff submitted to BCBST a religious accommodation request concerning the Covid-19 vaccination requirement.

8. On September 27, 2021, BCBST denied Plaintiff's proposed accommodation request and offered, as an alternative accommodation, that for an initial period of thirty (30) days subject to re-evaluation and potential extension depending on BCBST's assessment of the evolving environment and circumstances posed by COVID-19 (the "Accommodation Period"), which was described to Plaintiff as follows: (1) BCBST would modify temporarily Plaintiff's job responsibilities and requirements so that she could satisfy all other responsibilities of her job despite not being fully vaccinated; (2) Plaintiff's public-facing interactions would be removed from her role during the Accommodation Period; (3) Plaintiff could use the Accommodation Period to pursue other positions within BCBST then not subject to the vaccine mandate; (4) Plaintiff could use the Accommodation Period to reevaluate whether to become vaccinated against COVID-19.

9. Plaintiff accepted the offered accommodation under protest.

10. Plaintiff's employment with BCBST ended on November 4, 2021.

11. BCBST ended Plaintiff's employment because she did not comply with BCBST's Covid-19 vaccination requirement applicable to positions BCBST deemed public facing.

12. Before Plaintiff's employment with BCBST ended, her base salary was $116,350.

C. **Plaintiff's Theory**

On August 11, 2021, BCBST announced to its workforce that employees in public-facing roles would require Covid vaccination. BCBST classified Plaintiff as having a public-facing role, and therefore subjected Plaintiff to the Covid vaccination mandate. Plaintiff believed that receiving the Covid vaccination would violate her Christian faith. Specifically, based upon her research, Plaintiff discovered that Covid vaccinations were either produced or tested using aborted fetal cell lines. Plaintiff's Christian faith views abortion as a violation of God's law, and Plaintiff's religious beliefs prohibit her from ingesting any substance derived from the abortion process.

Since March of 2020, Plaintiff performed her job 100% remotely from home. During this time, all Plaintiff's client interactions were conducted using Microsoft Teams. While BCBST classified Plaintiff's role as public-facing, Plaintiff had very little interaction with third parties. Less than 1% of her total annual work hours involved interaction with clients. Plaintiff's remote interaction with clients had been just as successful as her in-person client interactions. None of Plaintiff's clients had complained about the remote interactions, and none had requested that remote interactions cease. In fact, Plaintiff's supervisors had not mentioned resuming in-person client interactions in the future.

On or about September 15, 2021, Plaintiff timely submitted to BCBST a religious accommodation request in response to the Covid vaccination mandate. Plaintiff's proposed accommodation suggested that she continue interacting remotely with clients without being vaccinated, as she had been doing for the past 18 months. BCBST denied Plaintiff's accommodation request. Indeed, BCBST denied all employee accommodation requests that requested a continuation in the employee's current role without being vaccinated.

4

Weeks before employees could even submit accommodation requests, BCBST pre-determined the "accommodation" that it would offer to all employees: (1) get vaccinated or (2) find another job not subject to the Covid vaccination mandate within 30 days. The company's one-size-fits-all proposal was decided without knowing the identity of the employee or any details about the employee's specific job duties. No individualized assessment was made. No input was sought from the employee's supervisor. Indeed, no dialogue or bilateral cooperation occurred between BCBST and the employee. Without any of the foregoing input, BCBST determined that "[a]s a general matter, the Company views requests for accommodation in the form of maintaining current job functions, which include but are not limited to external customer-facing interactions on a regular basis, but not getting fully-vaccinated is unduly burdensome to the Company."

Plaintiff accepted BCBST's proposal under protest, arguing that its proposal was not reasonable and that her proposal did not constitute an undue hardship. BCBST provided no affirmative assistance in helping Plaintiff secure another job for which she was qualified and which was not subject to the vaccine mandate. BCBST would not even provide a list of vacant jobs not subject to the vaccine mandate. Plaintiff applied for the only two vacant positions not subject to the vaccine mandate for which she was qualified. She received no interviews, and her applications were eventually rejected long after the 30-day "accommodation" period expired. At the expiration of the 30-day period, BCBST terminated Plaintiff's employment because she failed to comply with the Covid vaccination requirement.

BCBST cannot carry its burden of proving that: (1) it offered a reasonable accommodation to Plaintiff, and (2) Plaintiff's accommodation request constituted an undue hardship on BCBST's business, i.e., substantial increased costs in relation to the conduct of BCBST's business. Plaintiff seeks backpay damages from the date of her termination (November 4, 2021) through the date that

she began subsequent employment (November 28, 2022), compensatory damages, prejudgment interest, attorney fees, litigation costs, and punitive damages. Plaintiff demands a jury.

D. **BCBST's Theory**:

Plaintiff cannot recover under her failure-to-accommodate claims for three reasons: 1) Plaintiff did not hold a sincere religious belief that prevented her from being vaccinated against COVID-19; 2) BCBST offered Plaintiff a reasonable accommodation to her supposed religious beliefs; and 3) Plaintiff's requested accommodation would have caused BCBST to suffer undue hardship to its business needs.

Plaintiff does not hold a sincere religious belief preventing her from being vaccinated against COVID-19. Rather, Plaintiff held a personal, political objection to the COVID-19 vaccination. She personally felt strongly that she did not want to be vaccinated against COVID-19 and, in order to avoid vaccination, contrived a religious belief that, if sincere, would have required reasonable accommodation. But her claim to a religious objection is disingenuous, and her personal preferences are not protected under the law.

Even if Plaintiff's religious objection were sincere, which it is not, BCBST offered Plaintiff a reasonable accommodation that provided ample opportunity to eliminate the conflict between Plaintiff's purported religious beliefs and the requirements of her employment. The accommodation consisted of the following, initially offered for thirty (30) days subject to re-evaluation and potential extension depending on BCBST's assessment of the environment and circumstances posed by COVID-19 (the "Accommodation Period"):

- BCBST modifying temporarily Plaintiff's job responsibilities and requirements so that she could satisfy all other responsibilities of her job despite not being fully vaccinated;

6

- BCBST removing Plaintiff's public-facing interactions from her role during the Accommodation Period;

- BCBST encouraging Plaintiff to use the Accommodation Period to pursue other positions within BCBST then not subject to the vaccine mandate;

- BCBST allowing Plaintiff to use the Accommodation Period to reevaluate whether to become vaccinated against COVID-19, including to consider alternative vaccines that could become available that would not violate her supposed religious beliefs; and

- Upon Plaintiff's termination, BCBST designated Plaintiff as eligible for rehire, which it generally would not have done for employees whose employment ended for cause.

Plaintiff did not make diligent efforts to cooperate with BCBST and make BCBST's offered accommodation workable. She only applied for two jobs during the Accommodation Period. And she did not do so until near the end of the Accommodation Period.

Even if Plaintiff held a sincere religious belief preventing her from being vaccinated against COVID-19, and even if BCBST's accommodation were unreasonable, Plaintiff's requested accommodation—being permitted to work from home indefinitely—would unduly burden BCBST's business needs. BCBST's Clients generally expect that, absent extenuating circumstances from a pandemic, BCBST teams that include Biostatistical Research Scientists like Plaintiff will make their regular presentations in-person. Since resuming in-person operations, over 50% of BCBST's Clients have requested resumption of in-person meetings. But, for the Clients assigned to Plaintiff—all of whom were major Clients—of those that remain Clients of BCBST, over 70% have resumed in-person meetings. The Clients, not BCBST, determine when

7

these meetings will be in-person. Given: 1) the detailed level of knowledge required for Biostatistical Research Scientists of each of their assigned client's health plans; 2) the limited notice that BCBST receives from Clients that a meeting will be in-person; and 3) Clients' preference to be assigned to one Biostatistical Research Scientist with whom they develop trust and upon whom they rely for insight, it would not have been feasible to constantly re-assign Plaintiff to only those clients seeking remote meetings, and then to likewise reassign Plaintiff's colleagues to Plaintiff's Clients who request to meet in-person.

### IV. Contested Issues of Law

Whether "bilateral cooperation" between an employer and employee is required and, if required, whether "bilateral cooperation" necessitates an open dialogue between the employer and employee in determining whether a reasonable religious accommodation can be made.

BCBST believes that the below matters are contested issues of law to be resolved through determination of appropriate jury instructions. Plaintiff disagrees.

Whether an employee can discharge its obligation to reasonably accommodate an employee by providing her additional time and assistance in locating alternative employment within the company that would remove the conflict between the employer's policy and the employee's religious belief.

Whether the reasonableness of an offered accommodation and the potential hardship of alternative accommodations are determined with the benefit of hindsight or based on the employer's good-faith understanding of the circumstances at the time in question.

Whether "undue hardship" can encompass more than financial burden to the employer and include costs difficult to quantity, including reputational costs and the risk of harm to client relationships.

Whether a potential accommodation that conflicts with an essential job function is a *per se* undue hardship.

Whether it is within BCBST's discretion to determine its employees' essential job functions.

## V. Exhibits

The parties have disclosed all non-rebuttal exhibits in accordance with Fed. R. Civ. P. 26(a)(3)(C). All such exhibits to be introduced have been pre-marked in such a way as to allow the Court to determine which party is offering them. The parties have prepared a joint list of exhibits. The parties have endeavored to stipulate to the admissibility of all exhibits to the extent possible. The parties cannot stipulate to the admissibility of the following exhibits:

a. **Plaintiff's Exhibits**

None are contested at this time, but may be contested under Federal Rule of Evidence 402 or 403, as permitted under Federal Rule of Civil Procedure 26(a)(3)(B), if the need arises at trial.

b. **BCBST's Exhibits**

**The following BCBST Exhibits were contested and will not be offered at trial:**

1. Exhibit 20 – BCBST's EEOC position statement – hearsay.

2. Exhibit 23 – Exhibits 3-8 of the deposition of Dr. Andrea Willis – these six documents are unrelated and should not be collectively bundled.

3. Exhibit 37 – Plaintiff's unemployment records – collateral source rules bars evidence of unemployment benefits received

4. Exhibit 38 – Plaintiff's pay stubs beyond the end of the backpay period (12/16/22 – 6/30/23) – not relevant

9

**The parties could not resolve Plaintiff's objections to the following exhibits**

1. Exhibit 22 – Communication dated 5/24/22 between Lynn Benton and Sandra Faulkner (exhibit 9 to BCBST's summary judgment response) – hearsay. BCBST has agreed not to offer the exhibit for the truth of the matter asserted.

2. Exhibit 28 – Immunization records of Plaintiff's minor children – not relevant. BCBST contends the exhibit is relevant because it is probative both of the sincerity of Plaintiff's purported religious object to vaccination and of Plaintiff's credibility, generally.

3. Exhibit 39 – Plaintiff's joint tax returns – husband's financial information not relevant; collateral source rule bars evidence of unemployment benefits received. BCBST contends that the "other income" listed in the returns may be probative of mitigation, and any relevance objections may be cured by a limiting instruction to the jury explaining what contents of the returns they may and may not consider as evidence.

For more detailed explanation of Plaintiff's objections, see Plaintiff's Objections to BCBST's Rule 26(a)(3)(A) Disclosures, (Doc. 51).

**VI.** **Witnesses**

The parties have disclosed all witnesses in accordance with Fed. R. Civ. P. 26(a)(3)(A). A list comprised of the names of all witnesses, their addresses and telephone numbers, is as follows:

a. **For Plaintiff:**

1. Tanja Benton, 1627 Auburndale Ave., Chattanooga, TN (423) 322-3894

2. Hal Gault, 2402 Boston Branch Cir., Signal Mountain, TN (423) 535-7838

3. Mike McPherson, 420 Pitts Rd., Hixson, TN (423) 208-4424

4. Tony Pepper, 90 Founding Way, Unit G, Lookout Mountain, GA (423) 680-9280

5. Roy Vaughn, 1199 Longholm Ct., Chattanooga, TN (423) 535-8364

6. Jennifer Shields Wilson – by deposition, unless witness appears at trial and then would be subject to leading questions per Rule 611(c).

b. **For BCBST:**

| Name | Address | Telephone No. |
|---|---|---|
| Lynn Benton | 107 Pierre Pl., White House, TN 37188 | (615) 587-1610 |
| Tanja Benton | 1627 Auburndale Ave., Chattanooga, TN 37415 | (423) 322-3894 |
| Harold Gault | 2402 Boston Branch Cir., Signal Mountain, TN 37377 | (423) 535-7838 |
| Maureen Lowe | 332 Hidden Oaks Dr., Flinstone, GA 30725 | (423) 535-4046 |
| Mike McPherson | 420 Pitts Road, Hixson, TN 37343 | (423) 208-4424 |
| Roy Vaughn | 1191 Longholm Court, Chattanooga, TN 37405 | (423) 535-8364 |
| Dr. Andrea Willis | 860 River Gorge Drive, Chattanooga, TN 37419 | (423) 535-5913 |
| Jennifer Shields Wilson | 840 26th Ave, San Francisco, CA 94121 | (423) 718-2733 |

**VII. Other Matters**

a. **Trial:** This case is set for trial before the undersigned and a jury at 9:00 a.m. on June 25, 2024. Counsel shall be present on the first day before commencement of trial to take up any preliminary matters. The probable length of trial is four (4) days. The parties should be prepared for trial on the scheduled date. If this case is not heard immediately, it will be held in line until the Court's schedule allows the trial to begin.

b. **Possibility of Settlement:** Settlement is unlikely.

c. **Miscellaneous Matters:**

1. Motions *in limine* filed by both parties (Docs. 52-59) are currently pending.

2. Whether to bifurcate trial to determine liability prior to damages.

3. The process for voir dire, including if the Court anticipates providing a case-related survey in advance or asking case-related questions of the venire; and, if so, whether the parties may suggest questions to be tendered by the Court.

\* \* \*

This Final Pretrial Order shall supplant the pleadings and is agreed upon by the parties. Fed. R. Civ. P. 16; *see U.S. v. Hougham*, 364 U.S. 310, 315 (1960); *see also Ricker v. Am. Zinser Corp.*, 506 F. Supp. 1 (E.D. Tenn. Sept. 11, 1978), aff'd, 633 F.2d 218 (6th Cir. 1980).

**SO ORDERED.**

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**