IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| TANJA BENTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:22-cv-00118-CEA-SKL |
| v. | ) |
| | ) Judge Charles E. Atchley, Jr. |
| | ) Magistrate Judge Susan K. Lee |
| BLUECROSS BLUESHIELD OF | ) |
| TENNESSEE, INC., | ) |
| | ) JURY DEMAND |
| | ) |
| Defendant. | ) |

### DEFENDANT BLUECROSS BLUESHIELD OF TENNESSEE INC.'S RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW

The Defendant BlueCross BlueShield of Tennessee, Inc. ("BCBST") hereby moves for directed verdict. Directed verdict is warranted on the following grounds: (1) based on Plaintiff's testimony, while she labeled her belief as "Christian," a closer look at the testimony—as applied to the parties' Joint Proposed Jury Instruction No. 7—demonstrates there exists no reasonable dispute of fact that her objection to the COVID-19 vaccine was not "religious"; (2) unrebutted proof shows that BlueCross offered a workable accommodation but Plaintiff failed to meet her burden to make good-faith efforts to render the offered accommodation workable; and (3) BlueCross has put forth unrebutted evidence that it would have incurred substantial increased costs—those costs to Plaintiff's business unit and BlueCross's mission—if it offered Plaintiff her requested accommodation. Even if BlueCross is not granted judgment as a matter of law on Plaintiff's claim in its entirety, the Court should grant BlueCross judgment as a matter of law on Plaintiff's request for punitive damages.

1

## I. Legal Standard

"Judgment as a matter of law is appropriate '[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Burley v. Gagacki*, 729 F.3d 610, 621 (6th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)). A court should only grant judgment as a matter of law if "there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ." *Id.* (quotation omitted). Courts thus review the evidence "in the light most favorable to the non-moving party" and determine whether there was a "genuine issue of material fact for the jury." *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001) (citation omitted).

## II. Argument

### A. No Disputed Issue of Fact Exists that Plaintiff's Belief is Not Religious.

As described in the parties' Joint Proposed Jury Instruction No. 7, for a belief to qualify as religious, it must be part of a comprehensive belief system, and not simply an isolated teaching. Moreover, a religion is generally recognized by the presence of certain formal and external signs.

The parties' jury instruction is drawn from the EEOC's compliance manual. The compliance manual, in providing guidance on recognizing a religious belief, cites *Fallon v. Mercy Medical Center*, 877 F.3d 487, 492 (3d Cir. 2017). *Fallon* describes the following as examples of "formal and external signs" characteristic of a religion: "formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of holidays and other similar manifestations associated with the traditional religions." 877 F.3d at 492.

Plaintiff has not put forth evidence that her opposition to the COVID vaccination is part of a comprehensive belief system. While she has offered testimony that she turns to bible passages

2

as a source of strength, she has only identified one purportedly religious *belief* that she holds: an opposition to abortion. But an opposition to abortion is not, *per se*, religious. A secular person could believe that life begins at conception and be opposed to abortion on moral, non-religious grounds.

Plaintiff has not identified any comprehensive belief system she holds. Rather, when asked where one could look to determine what her religious beliefs are, she testified they are "what I profess." But a belief is not religious merely because the Plaintiff says so.

Plaintiff's past behavior further indicates that her opposition to the COVID vaccine is just an isolated teaching and not part of a comprehensive belief system. She used to receive annual flu shots. She has vaccinated her children. While there is not proof in the record whether any of the vaccinations were derived from "aborted fetal cell lines," Plaintiff testified that she *never even inquired* whether any other vaccine she has taken or scheduled for her children would violate her beliefs. Her past conduct, and lack of curiosity in determining whether her other choices might implicate her opposition to abortion, demonstrates an isolated belief regarding the COVID-19 vaccine.

Likewise, Plaintiff's beliefs are not marked by the presence of formal and external signs characteristic of religion. She neither attends formal services, nor ceremonial functions, nor follows any clergy, nor any organizational structure, nor participates in any efforts of propagation, nor observes religious holidays (with the exception of a secular Christmas). She could not identify where her religious beliefs come from other than herself—and some podcasts. That is inconsistent with what the law expects of beliefs that one would recognize as "religious."

For the foregoing reasons, reasonable minds could not differ that Plaintiff has failed to meet her burden to put forth evidence indicating that her opposition to BlueCross's covid-vaccine mandate was based on a religious belief.

B. <u>No Disputed Fact Exists that BlueCross's Offered Accommodation Was Workable but Plaintiff—Because of her Misconceptions About the Accommodation and Later Hard Feelings about BlueCross—Failed to Make Diligent Efforts to Make the Offered Accommodation Workable.</u>

Where, as here, an employer offers the employee an accommodation that could, with some cooperation by the employee, eliminate the religious conflict, then the employer has met its duty under the law—the employee's failure to cooperate in good faith cannot render the accommodation unreasonable. *See, e.g.*, *Bruff v. N. Miss. Health Servs.*, 244 F.3d 495, 502–504 (5th Cir. 2001); *Telfair v. Fed. Express Corp.*, 567 F. App'x 681, 684 (11th Cir. 2014); *Walden v. Ctrs. For Disease Control & Prevention*, 669 F.3d 1277, 1294 (11th Cir. 2012); *see also Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987).

For example, in *Bruff v. Northern Mississippi Health Services*, Ms. Bruff—an employee assistance program ("EAP") counselor—was assigned to counsel a woman who informed Ms. Bruff that "she was a homosexual" asking "for help in improving her relationship with a female partner." 244 F.3d at 497. Ms. Bruff declined to counsel her and—after Ms. Bruff's supervisor received a complaint from the client about Ms. Bruff's declination of counsel—Ms. Bruff sought to "be excused from . . . actively helping people involved in the homosexual lifestyle to have a better relationship with their homosexual partners." *Id.* Management determined that the accommodation was not feasible because of the burden it would impose on the other two counselors, and Ms. Bruff was placed on unpaid leave. *Id.* at 498. Ultimately, the employer offered Ms. Bruff one potential accommodation: she could request a transfer and, if she did so, she would be given thirty days to find and obtain an alternative position; if unsuccessful, her employment

4

would be terminated. *Id.* Ms. Bruff accepted the offered accommodation, applied for one open position, was not offered the position, and her employment ended after the thirty-day accommodation period. *Id.* The Fifth Circuit concluded that the employer's offered accommodation was reasonable. *Id.* at 501. The court, in reversing the district court's denial of the employer's motion for judgment as a matter of law, noted that—because "Bruff displayed almost no . . . cooperation or flexibility"—she failed to comply with an employee's "duty to cooperate in achieving accommodation of his or her religious beliefs." *Id.* at 503. The court ultimately concluded, as a matter of law, that "the Medical Center's ***offer to give Bruff 30 days*** to transfer to another position where conflict of care issues were less likely to ***arise was beyond peradventure a reasonable accommodation***." *Id.* (emphasis added).

Likewise, in *Telfair v. Federal Express Corporation*, Garett and Travis Telfair—brothers and Jehovah's Witnesses who worked for FedEx as part-time couriers—were "redeployed" from Monday–Friday schedules to Tuesday–Saturday schedules. 567 F. App'x at 682. The Telfairs each sought religious accommodations—specifically, exemptions from Saturday work—given their faith did not permit them to work on Saturdays. *Id.* FedEx declined to offer the Telfairs' preferred accommodation. *Id.* Instead, FedEx offered the Telfairs alternative positions that would have resulted in reductions of pay of about $5 per hour or, alternatively, the opportunity to apply for open positions during a 90-day leave of absence. *Id.* The Telfairs chose the latter, but did not apply for any jobs during their leaves of absence. *Id.* The Eleventh Circuit, affirming summary judgment in FedEx's favor, concluded that FedEx's offered accommodation was reasonable as a matter of law. *Id.* at 683–84. The court, in concluding that the offer of time to obtain alternative employment was reasonable, cited its prior decision in *Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1293 (11th Cir. 2012), and, in describing its conclusion in *Walden*, the

5

*Telfair* court explained, "***an employer satisfied its obligation of providing a reasonable accommodation to an employee by encouraging the employee to obtain new employment with the company*** and offering the employee assistance in obtaining a new position. We further recognized ***the employee had failed to comply with her own duty to make a good-faith attempt to accommodate her needs through the offered accommodation***, which had been triggered by the employer's offer of a reasonable accommodation." *Id.* (emphasis added) (internal citation omitted).

*Walden* went further than *Telfair*. In *Walden*, the employee—an EAP like *Bruff* who objected to counseling homosexuals—insisted upon informing patients of her religious views when referring homosexual clients to other providers. 669 F.3d at 1281. Her employer admonished her for doing so. *Id.* at 1281–82. When Ms. Walden refused to modify her approach to referring out homosexual clients, she was laid off from her position. *Id.* at 1282. Given the layoff designation, Ms. Walden was provided the opportunity to be rehired by her employer, retaining her seniority for a period of one year. *Id.* Nevertheless, Ms. Walden did not apply for any positions during that time. *Id.* The court concluded that ***the layoff designation*** was a sufficiently reasonable accommodation, but that Ms. Walden failed to meet her duty to cooperate in making the accommodation workable—instead insisting on her preferred accommodation, a transfer to a non-EAP position. *Id.* at 1293–95. The court effectively concluded that Ms. Walden, through her own stubbornness, could not render her employer's offered accommodation unreasonable. *Id.*

While the Sixth Circuit has not yet addressed whether time to obtain alternative employment that could eliminate the religious conflict is a reasonable accommodation, its approach aligns with the above sister circuits insofar as it has recognized an employee's duty to cooperate in good faith to render an offered accommodation workable. For example, in *Smith v.*

6

*Pyro Mining Co.*, 827 F.2d 1081, 1085 (6th Cir. 1987), the court recognized that:

> An employee cannot shirk his duties to try to accommodate himself or to cooperate with his employer in reaching an accommodation by a mere recalcitrant citation of religious precepts. Nor can he thereby shift all responsibility for accommodation to his employer. Where an employee refuses to attempt to accommodate his own beliefs or to cooperate with his employer's attempt to reach a reasonable accommodation, he may render an accommodation impossible.

(quoting *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1286 (8th Cir. 1977)). The *Smith* court nevertheless rejected the offered accommodation—voluntary shift-swapping when scheduled to work Sundays—as unreasonable, given the employee had a categorical religious objection to anyone working on Sundays, not just to his own Sunday work, so the accommodation could not have eliminated the religious conflict. *Id.* at 1088. The court explained in dicta, however, that "**we think it clear** that if Smith had no religious qualms about asking others to work the Sundays he was scheduled to work, then Pyro's proposed accommodation would have been reasonable." *Id.* (emphasis added).

Here, as in *Bruff* and *Taylor*, BlueCross provided Plaintiff time, access to BlueCross's internal job board, and assistance by connecting her with Stephanie Jacobs to assist Plaintiff in obtaining alternative employment within the company. *See* Testimony of Jennifer Shields and Hal Gault. The Fifth and Eleventh Circuits, respectively, found such an accommodation to be sufficient as a matter of law to trigger the employee's obligation to make good-faith efforts to secure alternative employment within the company that would eliminate the conflict between the requirements of employment and the employee's religion.

Plaintiff did not. She testified that she spent a significant amount of time ***looking***  for jobs, but little time applying. She further testified that she did not request help in determining which jobs were subject to the mandate until late in the accommodation period (about 4 days before the end of the accommodation period) and, when she asked for the help, she was connected with

7

Stephanie Jacobs—but did not ask any questions of her beyond that answered in Ms. Jacobs' email. Only after receiving Ms. Jacobs' response—on or about November 1, 2021—did Plaintiff apply for any jobs. She testified she applied for only 2. Applying for just 2 out of about 100 jobs does not demonstrate good faith efforts to secure alternative employment. Plaintiff's conduct after her employment ended demonstrates as much—she applied for hundreds of jobs with other employers.

But when Plaintiff failed to secure alternative employment not subject to the mandate, her accommodation did not end. Rather, only the portion of the accommodation allowing her to continue to work remotely ended. When the accommodation period ended, her employment ended as well, but she was designated for rehire. Nevertheless, she did not apply for another job with BlueCross. While Plaintiff was emotional in explaining why and was clearly upset with BlueCross, that does not change the fact that it was her burden to make diligent efforts to make the rehire accommodation workable under the law, as explained by the Eleventh Circuit in *Walden*.

Moreover, Mr. McPherson testified that, had Plaintiff reapplied after the mandate ended he would have supported her and had previously offered to help her however he could. Plaintiff testified that she knew that BlueCross's mandate had been enjoined, the implication being she knew that—despite receiving an email in the weeks prior that all jobs required the vaccine—she would have been eligible for her old job in light of the injunction.

For the foregoing reasons, the evidence in the record demonstrates that BlueCross discharged its obligation to provide Plaintiff a reasonable accommodation as a matter of law. By offering an accommodation that could have been workable with diligent efforts of Dr. Benton— one the above-described cases recognize as reasonable—BlueCross met its duty under the law. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) ("where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end.").

8

C. There is a Complete Absence of Evidence Rebutting BlueCross's Defense that Plaintiff's Requested Accommodation Would Have Caused Undue Hardship to Plaintiff's Business Unit and/or Brand Reputation.

Plaintiff, in her testimony and in her examination of other witnesses, only elicited evidence of the direct financial cost to BlueCross through Plaintiff's requested accommodation. Other costs, however, are cognizable, and can cause undue hardship.

For example, while *Groff v. DeJoy*, 600 U.S. 447, 473 (2023) changed the undue hardship standard in the Sixth Circuit from *de minimis* to substantial increased cost, the *Groff* Court recognized that "the administrative costs of coordination with other nearby stations with a broader set of employees" could be considered upon remand. In this District, Judge McDonough has since recognized that non-financial harms can still be considered post-*Groff*. *Speer v. Ucor LLC*, No. 3:22-cv-426, 2023 U.S. Dist. LEXIS 198889, at *20 (E.D. Tenn. Nov. 6, 2023) ("'undue hardship' does not only refer to the economic cost of providing an accommodation."). And district courts in other jurisdictions have considered a multiplicity of other costs including to health and safety, reputation, damage to the ability to achieve the employer's mission, among others—that may come into play in an undue hardship analysis. *See, e.g.*, *Id.* at *20; *Adams v. Mass Gen. Brigham Inc.*, No. 21-11686-FDS, 2023 U.S. Dist. LEXIS 174606, at *15 (D. Mass. Sept. 28, 2023); *Ryan v. Dep't of Just.*, 950 F.2d 458, 461–62 (7th Cir. 1991); *Baz v. Walters*, 782 F.2d 701, 706–07 (7th Cir. 1986); *Devore v. Univ. of Ky. Bd. of Trs.*, No. 5:22-cv-00186-GFVT-EBA, 2023 U.S. Dist. LEXIS 167239, at *11–12 (E.D. Ky. Sept. 18, 2023).

BlueCross would have sustained substantial administrative costs to Plaintiff's business unit had Plaintiff's preferred accommodation been granted. Mr. McPherson testified that it would have been challenging to allow research scientists to swap clients given the relationship and trust that research scientists develop with their clients. As customers began requesting in-person meetings—

9

and 71% of Plaintiff's clients have done so—the proof shows this would have been a significant challenge to continually accommodate Plaintiff's need to be a remote-only employee.

Likewise, there is uncorroborated proof that the policy was important to BlueCross's ability to achieve its mission to keep people safe. Mr. Vaughn and Dr. Willis testified that prioritizing health and safety was the purpose of the policy. Mr. Gault testified that, had Plaintiff's requested accommodation been granted—an exemption to the mandate—BlueCross would have essentially done away with the mandate through the exemption.

While Plaintiff could have put proof in the record that she played but a small part in BlueCross's ability to achieve these larger objectives. She did not. BlueCross's proof is thus unrebutted.

> D. <u>Plaintiff has failed to present any competent evidence into the record probative of malice or reckless indifference.</u>

The jury may assess punitive damages only if it finds that the alleged discriminatory conduct of BlueCross's managerial employees or officers was done with malice or in reckless disregard of the Plaintiff's rights. *See* 42 U.S.C. § 1981a(b)(1); *Kolstad v. American Dental Association*, 527 U.S. 526, 529–30 (1999). No such proof was introduced. An action is with malice if a person knows that it violates the law and does it anyway. *Kolstad*, 527 U.S. at 529–30 An action is in reckless disregard of a plaintiff's rights if taken with knowledge that it may violate the law. *Id.* No proof was suggested through any witness that any actor of BlueCross had such a state of mind.

Malice or reckless indifference will not be shown where "the employer discriminates with the distinct belief that its discrimination is lawful." *Id.* at 536–37. No proof was offered by Plaintiff of a belief that anyone connected with BlueCross was other than acting with lawful belief.

10

Case 1:22-cv-00118-CEA-SKL    Document 85    Filed 06/26/24    Page 10 of 14    PageID #: 1908

There were two steps where Plaintiff's rights were implicated: (1) BlueCross's development of the mandate; and (2) its implementation and application to Plaintiff. There is no evidence in the record that BlueCross demonstrated malice or reckless indifference in its development of the mandate. Both Mr. Vaughn and Dr. Willis testified that its purpose was to keep people safe. That good is the opposite of malice or reckless indifference from anyone.

Nor is there evidence in the record that BlueCross demonstrated malice or reckless indifference in its application of the mandate as applied to Plaintiff. Mr. Vaughn's testimony showed that this application was narrowly drawn to apply only to public-facing (or upper-managerial) employees. And, the proof has shown that the accommodation would enable public-facing employees who had an objection to the mandate to investigate and seek alternative employment not subject to the mandate. While Plaintiff did not like that offer, she and her employer had a difference of opinion as to the accommodation's reasonability and the importance of the vaccine policy more generally. That difference of opinion does not demonstrate malice or reckless indifference toward anyone.

Moreover, the unrebutted evidence also suggests that BCBST had a good-faith belief that a statutory defense to liability was available. Under 42 U.S.C. § 2000e-2, it is an unlawful employment practice for an employer to discharge an employee because of the individual's "religion." But 42 U.S.C. § 2000e(j), however, exempts from unlawful religious discrimination those adverse employment actions undertaken because the employer is "unable to reasonably accommodate an employee's . . . religious observance or practice ***without undue hardship*** on the conduct of the employer's business." (emphasis added)

At the time Plaintiff's employment ended, a bona fide defense to liability applied based on the law as it existed at the time, as the Sixth Circuit applied a *de minimis* standard in assessing

11

whether an employer would incur undue hardship from accommodating an employee's religious beliefs. *See Virts v. Consolidated Freightways Corp. of Delaware*, 285 F.3d 508, 516 (6th Cir. 2002) (citing *Cooper v. Rubber Oak Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994)).[1] That standard changed only on June 29, 2023, when the Supreme Court's *Groff v. Dejoy* decision changed that "undue hardship" analysis within the meaning of Title VII and required the employer to show that "the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." 600 U.S. 447, 470 (2023).

Plaintiff's lone true suggestion offered to support her claim for punitive damages is BlueCross's change in a prior policy. The fact that BlueCross had a prior religious accommodation policy designed to respond to one-off, infrequent requests for accommodations that generally concerned <u>when</u> people worked, and had to develop a new policy to respond to many incoming requests concerning <u>how</u> people worked, does not show malice or reckless indifference. The testimony of Jennifer Wilson established why the policy was changed—for the pandemic, not to harm Plaintiff with malice or willful indifference. There is no evidence in the record whatsoever that BlueCross willfully or recklessly disregarded the law in developing the COVID accommodation policy. A narrowly drawn mandate, affecting public-facing employees, the group who were those that the company deemed essential to meet its goal to keep people safe and return to normal operations, and meet its business requirements, is not evidence of malice or reckless indifference.

---

[1] The parties have stipulated that Plaintiff's employment with BlueCross ended on November 4, 2021. *See* Agreed Final Pretrial Order ¶ 2(B)(10). Thus, at the time Plaintiff's employment ended, a de minimis standard governed BlueCross's analysis of Plaintiff's accommodation request. As the reasonableness of BlueCross's belief regarding the applicability of an undue hardship defense is a material issue to Plaintiff's eligibility for punitive damages, and that belief depends upon BlueCross's perceptions regarding its liability under the applicable law as it existed at the time when it chose to end. Proof that, in light of the likely-applicable defense, BlueCross acted with malice or reckless indifference was required. No exists.

## CONCLUSION

For the foregoing reasons, BlueCross's Motion for Judgment as a Matter of Law should be granted. If not granted in full, BlueCross plays that the Motion be granted in part, respecting Plaintiff's request for punitive damages.

*/s/ David J. Zeitlin*
Robert E. Boston (TN BPR No. 009744)
Joshua T. Wood (TN BPR No. 035395)
David J. Zeitlin (TN BPR No. 037664)
HOLLAND & KNIGHT LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone:    (615) 244-6380
bob.boston@hklaw.com
josh.wood@hklaw.com
david.zeitlin@hklaw.com
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

   I hereby certify that on June 26, 2024, a copy of the foregoing document was served via the Court's electronic filing system.

Douglas S. Hamill
Mikel & Hamill PLLC
620 Lindsey Street, Suite 200
Chattanooga, TN 37403
423-541-5400
Email: dhamill@mhemploymentlaw.com

              */s/ David J. Zeitlin*
                Robert E. Boston