UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| TANJA BENTON, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) No. 1:22-cv-00118-CEA-SKL |
| BLUECROSS BLUESHIELD OF TENNESSEE, INC., | ) |
| Defendant. | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S RULE 50(a) MOTION**

Plaintiff responds in opposition to Defendant's Rule 50(a) motion for judgment as a matter of law. Because there are many disputed material facts on all central issues, judgment as a matter of law is not appropriate. The case should be submitted to the jury.

**I. STANDARD OF REVIEW**

Under Rule 50(a), a court should grant a motion for judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting Fed. R. Civ. P. 50(a)). The standard for granting judgment as a matter of law "mirrors" the standard for summary judgment, "such that 'the inquiry under each is the same.'" *Reeves*, 530 U.S. at 150, 120 S.Ct. 2097 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "In entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."

*Id.* (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quoting *Liberty Lobby*, 477 U.S. at 255, 106 S.Ct. 2505). "A motion for judgment as a matter of law should be granted 'only if reasonable minds could not come to a conclusion other than one favoring the movant.'" *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 627 (6th Cir. 2020) (quoting *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 602 (6th Cir. 2018)).

## II.  LEGAL ARGUMENT

### A.  Plaintiff's Objection to Covid Vaccination Mandate Was Religiously Based

The following facts presented at trial provide a basis for the jury to determine that Plaintiff's objection to the Covid vaccination was based upon a sincere religious belief.

- Plaintiff testified that she has adhered to the Christian faith from her childhood, that she regularly prays and reads her Bible, as well as participates in Bible studies.

- Plaintiff testified that her Christian beliefs, including her strong beliefs about the sanctity of human life and abortion, have been consistent throughout her life and helps guide all major decisions in her life.

- Plaintiff testified that her Christian faith shapes why she and her husband have insisted upon religious education for her children.

- Plaintiff's detailed accommodation request submitted to Defendant only referenced religious reasons for her objection to Covid vaccination.  Nothing in the statement referenced views or beliefs related to bodily autonomy, the vaccine's safety or effectiveness, or any political viewpoint.

2

- Plaintiff's accommodation request further referenced a consistent theme of spiritual warfare, alluding to Ephesians 6:10-18 ("the armor of God").
- Plaintiff testified that she believed her act of opposing Defendant's Covid vaccination mandate was an act of spiritual warfare.
- Contemporaneous group chats and text messages demonstrate that Plaintiff sincerely believed that her objection to the Covid vaccination was an act of spiritual warfare, and that "God is on our side" in so objecting. Her statements made on the private chat group and to a co-worker is circumstantial evidence that she sincerely believed her opposition to Covid vaccination to be religiously motivated.
- No proof was ever introduced showing that Plaintiff objected to Covid vaccination for any other reason.
- Plaintiff testified that she has consistently held, for her entire adult life, a firm religious belief about the sanctity of human life, that humans are made in God's image, and therefore that abortion is abhorrent to God's law.

The testimony of Lynn Benton is not dispositive on this issue. The following testimony from Lynn Benton is relevant as to genuine issues of material fact.

- Lynn Benton admitted that Plaintiff barely talks, which is consistent with the testimony from Plaintiff that she is a quiet and very private person, who rarely expresses her religious views in public.
- Lynn Benton admitted that she has not had a spiritual conversation with Plaintiff in over 20 years, and that Lynn herself has never brought up or initiated spiritual matters with Plaintiff in conversation.

3

- Lynn Benton admitted that she has never discussed the topic of sanctity of human life or abortion with Plaintiff.

- Lynn Benton admitted that she has no proof why Plaintiff objected to the Covid vaccination, as they never discussed the matter.

- Plaintiff, on rebuttal, testified that the relationship between her and her husband and Lynn Benton is not close because they have very different lifestyles.

- Plaintiff testified that Lynn Benton is only invited to her home twice per year because Plaintiff and her husband want to shield Lynn's alternative lifestyle from their children.

Courts have held that an employee's belief about abortion, which may involve both religious and political views, are cognizable as sincerely held religious beliefs under Title VII. *See Gadling-Cole v. W. Chester Univ.*, 868 F. Supp. 2d 390, 396-97 (E.D. Pa. 2012) (emphasizing that Title VII religious discrimination claims have been held cognizable as to topics that "overlap both the religious and political spectrum, such as abortion, so long as the claims are based on a plaintiff's bona fide religious belief"). *See also Ellison v. Inova Health Care Servs.*, 2023 WL 4627437, at *6 (E.D. Va. July 19, 2023) (plaintiff linking verses from the Christian Bible about the sanctity of human life to the use of fetal cell tissues in the testing or manufacture of vaccinations adequately satisfies the sincerely religious belief requirement); *Aliano v. Twp. of Maplewood*, 2023 WL 4398493, at *7 (D.N.J. July 7, 2023) (denying a motion to dismiss when the plaintiff identified the textual source of the anti-abortion belief and explained how their understanding of the verse led them to conclude that receiving the Covid vaccine conflicted with their faith). In summary, there is ample disputed testimony on this topic for the jury to consider.

    **B.    Defendant Did Not Offer Plaintiff a Reasonable Accommodation**

4

There is ample proof that Defendant's proposed accommodation was not a reasonable accommodation under the law. First, the Supreme Court has held that an employer must consider all options rather than merely addressing the specific accommodation proposed by the employee. *Groff v. DeJoy*, 600 U.S. 447, 473 (2023). At trial, there was proof that Defendant did not consider all possible options for making accommodations. While some defense witnesses claimed that several options were considered, there was no contemporaneous proof that this actually happened. Roy Vaughn gave inconsistent testimony as to whether masking and periodic testing was actually considered. Furthermore, Vaughn testified that the company would not consider any alternatives suggested by objecting employees once the company had decided its accommodation that would offered. Testimony that the only accommodation offered was pre-determined and one-size-fits-all is sufficient evidence for a jury to determine that Defendant had failed to put forth a reasonable accommodation. *See Mohamed v. 1st Class Staffing, LLC*, 286 F. Supp. 3d 884, 909 (S.D. Ohio 2017) (examples of not engaging in bilateral cooperation include failing to consult an employee about alternative religious accommodations or offering an accommodation in a take-it-or-leave it fashion). Most importantly, the proof showed that no member of Human Resources actually read or considered Plaintiff's accommodation request before it was rejected. Failure to allow any input from the employee in the accommodation process violates the "bilateral cooperation" requirement expressed by the Supreme Court. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

Unlike the old procedure for handling religious accommodation requests, the new protocol used by Defendant to handle reasonable accommodation requests lacked an individualized assessment. The offered accommodation was made without any input from the employee, the employee's supervisor, or front-line HR. The company did not even know who Plaintiff was or what her job was when it created the accommodation.

5

The jury heard testimony that the three-prong accommodation offer provided no practical benefits to Plaintiff. First, the offer to remove her "public facing" duties for 30 days was worthless. Both Plaintiff and Mike McPherson testified that Plaintiff had no public facing duties scheduled for the next 30 days, or even for the next several months. Second, the offer of 30 days for Plaintiff to find alternate employment was not workable. Plaintiff desperately looked for jobs, but could only find two jobs for which was even qualified. Despite repeated requests, Defendant would not provide Plaintiff with a list of vacant jobs not subject to the vaccine mandate. The job postings did not clearly indicate whether the vacancies were subject to the mandate. Even when Plaintiff applied for two internal jobs, Defendant refused to simply offer the positions to her. Rather, Defendant forced her to go through the competitive bid and interview process. Defendant did nothing to "fast track" her applications. The proof showed that the selection decisions regarding the two jobs for which she applied were made several months after the November 3rd deadline. Finally, even Jennifer Shields admitted in an email to her boss Hal Gault that employees going through the accommodation process did not feel that the 30-day accommodation was workable.

The four cases cited by Defendant in its Rule 50 motion are materially distinguishable than the proof in this case. In *Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277 (11th Cir. 2012), although other positions were available, the plaintiff **refused to apply for any available positions**. Thus, the court found that she refused to accept or even attempt a reasonable accommodation. *Id*. at 1294. Likewise, in *Bruff v. N. Mississippi Health Servs., Inc.*, 244 F.3d 495 (5th Cir. 2001), the plaintiff was advised to apply for several jobs, but **she refused to do so**. **The plaintiff also declined a transfer to another position**. For these reasons, the Court found that the plaintiff had failed in her duty to cooperate. *Id*. at 502-03. In *Telfair v. Federal Express Corporation*, the plaintiffs **declined job transfers and then failed to apply for any vacant jobs**.

6

As discussed above, the proof in this case is a far cry from the blatant non-cooperation evidenced by the cases cited by Defendant.

### C. Plaintiff's Proposed Accommodation Request Was Not an Undue Hardship

Defendant failed to carry its burden on this issue. Plaintiff presented overwhelming proof that meeting with clients virtually, rather than in-person, caused no damage to client relationships. Tony Pepper testified that it was not necessary for Plaintiff to attend client meetings in-person so long as she could attend virtually. He kept a very close track on the health of client relationships on a monthly basis. He testified that no monthly client reports indicated that virtual (rather than in-person) client meetings had any negative effect on client relationships. Plaintiff testified that the effectiveness and quality of her client presentations were the same if done in-person or virtually. While Mike McPherson claimed that virtual meetings were less effective, he admitted that he never watched Plaintiff conduct a virtual meeting and therefore could not make a comparison. There was no proof submitted that Defendant lost money or clients because of virtual clients meetings. Finally, it is undisputed that the clients – not Defendant – chose whether to have meetings virtually or in-person. None of Plaintiff's clients in 2021 or 2022 chose to have their annual meetings in-person. Thus, Defendant failed to show a substantial increased cost tied to Plaintiff's request to continue meeting virtually with her clients.

### D. Punitive Damages

Disputed issues of material fact exist as to this issue. All HR representatives – Roy Vaughn, Hal Gault, and Jennifer Shields – testified that they were well aware of the law with respect to religious accommodation requests. These HR representatives all testified that the interactive process was an important component in determining whether a reasonable accommodation could be offered. And yet they were forced to admit that the new protocol that

7

they developed for the Covid vaccine mandate lacked a practical interactive process. While the words "interactive process" were included in the new protocol, they admitted that Plaintiff was never given an opportunity to discuss any alternative proposals before Defendant issued its "alternative accommodation" – which was a take-it-or-leave-it proposal. Plaintiff was never given a true back-and-forth dialogue before a decision was made. Rather, at best, she was allowed to "express her concerns," but nothing more. The company already had a religious accommodation policy that allowed input from the employee and the employee's direct supervisor. But Defendant deliberately chose not to follow that policy because it wanted "to make things uniform." As Tony Pepper testified, he and his manager tried to convince HR to allow three of his objecting employees to keep their jobs. As he testified, the accommodation could be handled at the management level. The jury can conclude that the executive team was afraid of such accommodations being made throughout the company. Therefore, local management and front-line HR were removed from the process to ensure a uniform outcome – that no religious accommodation requests would ultimately be granted. And the proof shows, according to Hal Gault, that all employees who requested a religious accommodation eventually lost their jobs after November 3, 2021. The jury can determine that the company "rigged" its accommodation procedure to effectuate its desired outcome – that if the employees were not vaccinated, they would no longer be employed.

### III. CONCLUSION

Defendant has failed to meet Rule 50(a)'s standard for judgment as a matter of law. The motion should be denied, and the case should be submitted to the jury to determine the disputed facts.

8

Case 1:22-cv-00118-CEA-SKL   Document 86   Filed 06/26/24   Page 8 of 9   PageID #: 1920

Respectfully submitted,

**MIKEL & HAMILL PLLC**

By: ___s/ *Doug S. Hamill*___
      Doug S. Hamill, BPR No. 022825
      Attorney for Plaintiff
      620 Lindsay Street, Suite 200
      Chattanooga, TN 37403
      (423) 541-5400
      dhamill@mhemploymentlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of June, 2024, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

By: ___s/ *Doug S. Hamill*___

9

Case 1:22-cv-00118-CEA-SKL   Document 86   Filed 06/26/24   Page 9 of 9   PageID #: 1921