<pre>
 1              IN THE UNITED STATES DISTRICT COURT

 2             FOR THE EASTERN DISTRICT OF TENNESSEE

 3                    CHATTANOOGA DIVISION

 4    ------------------------------------------------------
                                     :
 5    TANJA BENTON,                  :
                                     :
 6              Plaintiff,           :
                                     :
 7    v.                             :      1:22-CV-118
                                     :
 8    BLUECROSS BLUESHIELD OF        :
      TENNESSEE, INC.,               :
 9                                   :
                Defendant.           :
10    ------------------------------------------------------
                                   Chattanooga, Tennessee
11                                 June 27th, 2024

12            BEFORE:  THE HONORABLE CHARLES E. ATCHLEY, JR.
                       UNITED STATES DISTRICT JUDGE
13
      APPEARANCES:
14
                 FOR THE PLAINTIFF:
15
                 DOUGLAS S. HAMILL
16               MIKEL & HAMILL
                 620 Lindsey Street
17               Suite 200
                 Chattanooga, Tennessee 37403
18
                 FOR THE DEFENDANT:
19
                 ROBERT E. BOSTON
20               JOSEPH T. WOOD
                 DAVID ZEITLIN
21               HOLLAND & KNIGHT
                 511 Union Street
22               Suite 2700
                 Nashville, Tennessee 37219
23

24                        JURY TRIAL
                       THIRD DAY OF TRIAL
25                   EXCERPT OF PROCEEDINGS
                     JURY INSTRUCTIONS
</pre>

1          (The proceedings were held in the presence of

2          the jury, as follows:)

3          THE COURT:  Members of the jury, now it is time

4     for me to instruct you about the law that you must

5     follow in deciding this case.  I will start by

6     explaining your duties and the general rules that apply

7     in every single case.  Next, I will explain the law

8     related to the allegations made in plaintiff's

9     complaint.  Then I will explain some rules you must use

10    in evaluating particular testimony and evidence.  Then,

11    last, I will explain the rules that you must follow

12    during your deliberations in the jury room and the

13    possible verdicts you may return.

14          Please listen very carefully to everything I

15    say.

16          Jurors duties.  You have two main duties as

17    jurors.  The first one is to decide what the facts are

18    from the evidence you saw and heard here in court.

19    Deciding what the facts are is your job, not mine.  And

20    nothing that I have said or done during this trial was

21    meant to influence your decision about the facts in any

22    way.

23          Your second duty is to take the law that I give

24    you, apply it to the facts, and decide if plaintiff has

25    proved her case by a preponderance of the evidence.  It

1   is my job to instruct you about the law, and you are

2   bound by the oath that you took at the beginning of the

3   trial to follow the instructions that I give you even if

4   I -- even if you personally disagree with them.  This

5   includes the instructions that I gave you before and

6   during the trial and these instructions.  All the

7   instructions are important, and you should consider them

8   together as a whole.

9           The lawyers have talked about the law during

10  their arguments.  But if what they said is different

11  from what I say, you must follow what I say.  What I say

12  about the law controls.

13          Perform these duties fairly.  Do not let any

14  bias, sympathy, or prejudice you may feel toward one

15  side or the other influence your decision in any way.

16          Preponderance of the evidence.  This is a civil

17  case.  Plaintiff, Tanja Benton, is the party who brought

18  this lawsuit.  Defendant, BlueCross BlueShield of

19  Tennessee, Incorporated, is the party against whom the

20  lawsuit was filed.  Plaintiff has the burden of proving

21  her case by what is called the "preponderance of

22  evidence."

23          The term "preponderance of evidence" means

24  plaintiff must prove to you, in light of all the

25  evidence, that what she claims is more likely so than

1   not so.  To say it differently, if you were to put the

2   evidence favorable to plaintiff and the evidence

3   favorable to defendant on opposite sides of the scale,

4   plaintiff would have to make the scales tip somewhat on

5   her side.  If plaintiff fails to meet her burden on an

6   issue for which she has the burden of proof, the verdict

7   must be for the defendant.  If you find after

8   considering all the evidence that a claim or fact is

9   more likely so than not so, then the claim or fact has

10  been proved by a preponderance of the evidence.

11          In determining whether any fact has been proved

12  by a preponderance of the evidence in the case, you may,

13  unless otherwise instructed, consider the testimony of

14  all witnesses, regardless of who -- of who may have

15  called them, and all exhibits received into evidence,

16  regardless of who may have produced them.

17          You may have heard of the phrase "proof beyond

18  a reasonable doubt."  That is a stricter standard of

19  proof, and it applies -- and it applies only to criminal

20  cases.  It does not apply in civil cases such as this,

21  so you should put it out of your mind.

22          Evidence defined.  You must take -- make your

23  decision based only on the evidence that you saw and

24  heard here in court.  Do not let rumors, suspicions, or

25  anything else that you may have seen or heard outside of

1   court influence your decision in any way.

2       The evidence in this case includes only what

3   the witnesses said while they were testifying under

4   oath, the exhibits that I allowed into evidence, any

5   stipulations that the lawyers agreed to, and any facts

6   that I have judicially noticed.

7       Nothing else is evidence.  The lawyers'

8   statements and arguments are not evidence.  Their

9   questions and objections are not evidence.  My legal

10   rulings are not evidence, and my comments and questions

11   are not evidence.

12       During the trial, I may not have let you hear

13   the answers to some of the questions that the lawyers

14   asked.  I also may have ruled that you could not see

15   some of the exhibits that the lawyers wanted you to see.

16   And sometimes I may have ordered you to disregard things

17   that you saw or heard or I may have struck things from

18   the record.  You must completely ignore all of those

19   things.  Do not even think about them.  Do not speculate

20   about what a witness might have said or what an exhibit

21   might have shown.  These things are not evidence, and

22   you are bound by your oath not to let them influence

23   your decision in any way.

24       I also may have instructed you to consider some

25   evidence only for a certain purpose.  You must follow

1   those instructions and consider that evidence only for

2   the purpose that I told you it was to serve.  Make your

3   decision based only on the evidence as I have defined

4   them -- as I have defined it here and nothing else.

5          Consideration of evidence.  You are to consider

6   only the evidence in the case.  You should use your

7   common sense in weighing the evidence.  Consider the

8   evidence in light of your everyday experience with

9   people and events and give it whatever weight you

10   believe it deserves.  If you -- if your experience tells

11   you that certain evidence reasonably leads to a

12   conclusion, you are free to reach that conclusion.

13          In our lives, we often look at one fact and

14   conclude from it that another fact exists.  In law, we

15   call this an "inference."  A jury is allowed to make

16   reasonable inferences, unless otherwise instructed.  Any

17   inferences you make must be reasonable and must be based

18   on the evidence in the case.  The existence of an

19   inference does not change or shift the burden of proof

20   from the plaintiff to the defendant.

21          Corporation not to be prejudiced.  The fact

22   that a corporation is a party must not influence you in

23   your deliberations or in your verdict.  Corporations and

24   persons are equal in the eyes of the law.  Both are

25   entitled to the same fair and impartial treatment and to

1    justice by the same legal standards.

2          Stipulations.  In this case, the plaintiff and

3 the defendant have agreed or stipulated to certain

4 facts.  Therefore, you must accept the following

5 stipulated facts as proved:

6          One, plaintiff's employment with BlueCross

7 BlueShield of Tennessee began on July 8, 2005.

8          Plaintiff held the position of biostatistical

9 research scientist from July 2010 through the end of her

10 employment with BlueCross BlueShield of Tennessee.

11          As a biostatistical research scientist,

12 plaintiff was assigned to employer-sponsored group

13 health plans -- these are BlueCross BlueShield of

14 Tennessee clients -- and for many of her clients, at

15 least once per year per client, presented to

16 representatives of each client assigned to her.

17          Prior to the COVID-19 pandemic, plaintiff

18 almost always conducted client presentations in person.

19          BlueCross BlueShield of Tennessee notified

20 plaintiff via email on August 11, 2021, that her

21 position would be subject to BlueCross BlueShield of

22 Tennessee's COVID-19 vaccination requirement.  BlueCross

23 BlueShield of Tennessee further advised plaintiff that

24 she should submit -- that she could submit a religious

25 accommodation request regarding BlueCross BlueShield of

1   Tennessee's COVID-19 vaccine requirement.

2           Six, on August 27, 2021, BlueCross BlueShield

3   of Tennessee notified plaintiff that vaccination against

4   COVID-19 would be required for her role by October 4,

5   2021, and, again, reminded plaintiff that she could

6   submit a religious accommodation request.

7           Seven, on or about September 15, 2021,

8   plaintiff submitted to BlueCross BlueShield of Tennessee

9   a religious accommodation request concerning the

10  COVID-19 vaccination requirement.

11          Eight, on September 27, 2021, BlueCross

12  BlueShield of Tennessee denied plaintiff's proposed

13  accommodation request and offered, as an alternative

14  accommodation, that for an initial period of 30 days

15  subject to reevaluation and potential extension

16  depending on BlueCross BlueShield of Tennessee's

17  assessment of the evolving environment and circumstances

18  posed by COVID-19.  This is known as the "accommodation

19  period," which was described to plaintiff as follows:

20          One, BlueCross BlueShield of Tennessee would

21  modify temporarily plaintiff's job responsibilities and

22  requirements, though that -- so that she could satisfy

23  all other responsibilities of her job despite not being

24  fully vaccinated; two, plaintiff's public-facing

25  interactions would be removed from her role during the

accommodation period; three, plaintiff could use the
accommodation period to pursue other positions within
BlueCross BlueShield of Tennessee then not subject to
the vaccine mandate; and, four, plaintiff could use the
accommodation period to reevaluate whether to become
vaccinated against COVID-19.

Number nine, plaintiff accepted the offered
accommodation under protest;

10, plaintiff's employment with BlueCross
BlueShield of Tennessee ended on November 4, 2021.

11, BlueCross BlueShield of Tennessee ended
plaintiff's employment because she did not comply with
BlueCross BlueShield of Tennessee's COVID-19 vaccination
requirement applicable to positions BlueCross BlueShield
of Tennessee deemed public facing;

12, before plaintiff's employment with
BlueCross BlueShield of Tennessee ended, her base salary
was $116,350.

Direct and circumstantial evidence.  Now, some
of you may have heard the terms "direct evidence" and
"circumstantial evidence."  Direct evidence is simply
evidence like the testimony of an eyewitness, which, if
you believe it, directly proves a fact.  If a witness
testified that he saw it raining outside and you
believed him, that would be direct evidence that it was

1    raining.

2         Circumstantial evidence is simply a chain of

3    circumstances that indirectly proves a fact.  If someone

4    walked into the courtroom wearing a raincoat covered

5    with drops of water and carrying a wet umbrella, that

6    would be circumstantial evidence from which you could

7    conclude that it was raining.

8         It is your job to decide how much weight to

9    give the direct and circumstantial evidence.  The law

10   makes no distinction between the weight that you should

11   give to either one, and does not say that one is better

12   evidence than the other.  You should consider all the

13   evidence, both direct and circumstantial, and give it

14   whatever weight you believe it deserves.

15        Credibility of witnesses.  Another part of your

16   job as jurors is to decide how credible or believable

17   each witness was.  This is your job, not mine.  It is up

18   to you to decide if a witness's testimony was believable

19   and how much weight you think it deserves.  You are free

20   to believe everything that a witness said or only part

21   of it or none of it at all.  But you should act

22   reasonably and carefully in making these decisions.

23        Let me suggest some things for you to consider

24   in evaluating each witness's testimony.

25        Ask yourself if the witness was able to clearly

1    see or hear the events.  Sometimes even an honest

2    witness may not be able to see or hear what was

3    happening and may make a mistake.

4            Ask yourself how good the witness's memory

5    seemed to be.  Did the witness seem able to accurately

6    remember what happened?

7            Ask yourself if there was anything else that

8    may have interfered with the witness's ability to

9    perceive or remember the events.

10           Ask yourself how the witness acted while

11    testifying.  Did the witness appear honest?  Or did the

12    witness appear to be lying?

13           Ask yourself if the witness had any

14    relationship to either of the parties or anything to

15    gain or lose from the case that might influence the

16    witness's testimony.

17           Ask yourself if the witness had any bias or

18    prejudice or reason for testifying that might cause the

19    witness to lie or to slant the testimony in favor of one

20    side or the other.

21           Ask yourself if the witness testified

22    inconsistent -- inconsistently while on the witness

23    stand, or if the witness said or did something or failed

24    to say or do something at any time that is inconsistent

25    with what the witness said while testifying.  If you

1  believe that the witness was inconsistent, ask yourself

2  if this makes the witness's testimony less believable.

3  Sometimes it may; other times it may not.  Consider

4  whether the inconsistency was about something important

5  or about some unimportant detail.  Ask yourself if it

6  seemed like an innocent mistake or if it seemed

7  deliberate.

8          And ask yourself how believable the witness's

9  testimony was in light of all the other evidence.  Was

10  the witness's testimony supported or contradicted by

11  other evidence that you found believable?  If you

12  believe that a witness's testimony was contradicted by

13  other evidence, remember that people sometimes forget

14  things and that even two honest people who witness the

15  same event may not describe it exactly the same way.

16          These are only some of the things that you may

17  consider in deciding how believable each witness was.

18  You may also consider other things that you think shed

19  some light on the witness's believability.  Use your

20  common sense and your everyday experience in dealing

21  with other people, and then decide what testimony you

22  believe and how much weight you think it deserves.

23          Use of deposition.  A deposition is the sworn

24  testimony of a witness taken before trial.  The witness

25  is placed under oath and swears to tell the truth and

1   lawyers for each party may ask questions.  A court

2   reporter is present and records the questions and

3   answers.

4          Testimony -- deposition testimony is entitled

5   to the same consideration and is to be judged, insofar

6   as possible, in the same way as if the witness had been

7   present to testify.

8          Lawyers' objections.  There's one more general

9   subject that I want to talk to you about before I begin

10  explaining the elements of the claims made.  The lawyers

11  for both sides objected to some of the things that were

12  said or done during the trial.  Do not hold that against

13  either side.  The lawyers have a duty to object when --

14  whenever they think that something is not permitted by

15  the rules of evidence.  Those rules are designed to make

16  sure that both sides receive a fair trial.

17         And do not interpret my rulings on their

18  objections as any indication of how I think the case

19  should be decided.  My rulings are based on the rules of

20  evidence, not on how I feel about the case.  Remember

21  that your decision must be based only on the evidence

22  that you saw -- that you saw and heard here in court.

23         Definitions of the claims at issue.  That

24  concludes the part of my instructions explaining your

25  duties and the general rules that apply in every civil

1  case.  I will now explain the elements of plaintiff's

2  claims against the defendant.

3          Prohibition against religious discrimination in

4  the workplace.  Title VII of the Federal Civil Rights

5  Act of 1964 prohibits an employer from discriminating

6  against an employee because of his or her religion.  One

7  type of religious discrimination is an employer's

8  failure to reasonably accommodate an employee's

9  sincerely held religious beliefs.  When an employment

10 requirement conflicts with an employee's sincerely held

11 religious belief and the employer knows of the

12 employee's belief, the law requires that the employer

13 accommodate the employee's religious belief, unless the

14 employer demonstrates that it is unable to reasonably

15 accommodate the employee's religious belief without

16 undue hardship to the employer's business.

17         Title VII does not demand mere neutrality with

18 regard to religious practices, that they be treated no

19 worse than other practices; rather, it gives them

20 favored treatment, affirmatively obligating employers

21 not to fail or refuse to hire or discharge any

22 individual because of such individual's religious

23 observance and practice.  Title VII requires otherwise

24 neutral policies to give way to the need for an

25 accommodation.

1       Like federal law, Tennessee law also prohibits

2  an employer from discriminating against an employee

3  because of the employee's religion.  The duty of

4  employers to make reasonable accommodations to the

5  sincerely held religious beliefs of employees has been

6  incorporated into Tennessee law.  A religious

7  accommodation claim is analyzed in the same manner under

8  both federal and state law.

9       Religious accommodation claim elements.  In

10  this case, the plaintiff -- plaintiff's claims -- the

11  plaintiff claims that the defendant discriminated

12  against her by failing to reasonably accommodate her

13  sincerely held religious beliefs against COVID

14  vaccination.  To establish her claim, the plaintiff must

15  prove by a preponderance of the evidence three elements:

16  One, she holds a sincere religious belief that conflicts

17  with an employment requirement; two, she informed the

18  defendant about the conflict; and, three, she was

19  discharged for failing to comply with the conflicting

20  employment requirement.

21       In this case, only the first element is in

22  dispute, i.e., whether plaintiff's objection to the

23  COVID vaccination requirement was based upon a sincerely

24  held religious belief.  The second and third elements

25  have been met.

1    BlueCross's affirmative defenses to elements of

2    plaintiff's claim -- excuse me -- to elements of

3    plaintiff's case.  If the plaintiff proves her case, the

4    defendant may show it is not liable if it proves by a

5    preponderance of the evidence either, one, that it

6    offered the plaintiff a reasonable accommodation, or,

7    two, that it could not have reasonably accommodated the

8    plaintiff's religious beliefs without undue hardship.

9    Protection of sincerely held religious beliefs.

10   Only sincerely held religious beliefs warrant protection

11   under the law.  To determine whether an activity

12   qualifies as the kind of religious belief that merits

13   accommodation, you should look to whether the beliefs

14   professed by the employee are sincerely held and whether

15   they are, in the employee's own scheme of things,

16   religious.

17   Under the law, "religion" includes all aspects

18   of religious observance and practice as well as belief

19   that are, in the plaintiff's own scheme of things,

20   religious.  When determining if an observance, belief,

21   or practice is religious, the following factors you may,

22   but are not required to, consider are:  First, a

23   religion addresses fundamental and ultimate questions

24   having to do with deep and imponderable manners.

25   Second, a religion is comprehensive in nature.  It

1    consists of a belief system as opposed to an isolated

2    teaching.  Third, a religion often can be recognized by

3    the presence of certain formal and external signs.  The

4    law's protections apply whether the religious beliefs or

5    practices in question are common or non-traditional and

6    regardless of whether they are recognized by any

7    organized religion.

8            Social, political, and economic philosophies,

9    as well as mere personal preferences, are not religious

10   beliefs protected by Title VII.  However, overlap

11   between a religion and political belief does not place

12   the belief outside the scope of the law's religious

13   protections as long as the belief is part of a

14   comprehensive belief system and is not simply an

15   isolated teaching.

16           When evaluating sincerity, your finding will

17   depend on your assessment of the -- the plaintiff's

18   credibility and whether you believe she is honest about

19   her religious belief.  Factors that might undermine the

20   plaintiff's credibility include, but are not limited to,

21   whether she has behaved in a manner inconsistent with

22   the professed belief, whether the accommodation sought

23   is particularly -- is a particularly desirable benefit

24   that is likely to be sought for secular reasons, and

25   whether the timing of the request renders it suspect.

1          Evidence tending to show that an employee acted

2     in a manner inconsistent with her professed religious

3     beliefs is relevant to your assessment of the

4     plaintiff's credibility, and it should not be assumed

5     that an employee's beliefs are insincere simply because

6     some of his or her practices deviate from the commonly

7     followed tenets of his or her religion or because the

8     employee adheres to some common practices but not

9     others.

10          Whether an accommodation is reasonable.  If an

11    employer offers any accommodation that is reasonable,

12    even if the accommodation is not plaintiff's preferred

13    accommodation, then the employer has met its duty under

14    the law.  The reasonableness of an employer's attempt at

15    accommodation must be determined on a case-by-case basis

16    in the time of the events.  What may be a reasonable

17    accommodation for one employee may not be reasonable for

18    another.

19          An accommodation is reasonable if it removes

20    the conflict between the employment requirement and the

21    plaintiff's religious beliefs, unless the accommodation

22    would cause the employee to lose a benefit of employment

23    enjoyed by all other employees who do not share the same

24    religious conflict.  The employer bears the burden of

25    proving that it has offered a reasonable accommodation

1   by a preponderance of the evidence.

2          No bilateral cooperation required if reasonable

3   accommodation offered.  The law requires affirmative

4   action by the employer to help resolve, if possible, the

5   conflict between the employee's religious beliefs and

6   the employer's rule or policy.  An employer cannot

7   merely assess the reasonableness of a particular

8   possible accommodation -- accommodation suggested by the

9   employee.  Instead, an employer must consider other

10  options to resolve the employee's religious conflict.

11  But where the employer has already reasonably

12  accommodated the employee's religious needs, the

13  statutory inquiry is at an end.  The employer need not

14  further show that each of the employees's alternative

15  accommodations would result in undue hardship.

16         Undue hardship.  An employer must accommodate

17  an employee's religious beliefs unless the employer is

18  unable to reasonably accommodate an employee's religious

19  beliefs without undue hardship on the conduct of the

20  employer's business.  For purposes of this case, the

21  phrase "undue hardship" means substantial increased

22  costs in relation to the conduct of the defendant's

23  particular business.

24         In determining whether accommodating the

25  plaintiff's religious beliefs would constitute an undue

1    hardship, you must consider all the relevant factors in

2    the case at hand, including the particular

3    accommodations at issue and their practical impact in

4    light of the nature, size, and operating cost of the

5    defendant.

6          Undue hardship can encompass more than the

7    financial burden to the employer.  Employers may

8    consider intangible costs, such as, for example, the

9    loss of office efficiency or the safety risk an

10   accommodation could pose to others, the effect on the

11   plaintiff's coworkers and resultant ramifications it has

12   for the conduct of the employer's business, damage to

13   the employer's ability to achieve its mission, or damage

14   to the employer's public image.

15         Whether hardship is undue requires you to

16   undertake an individualized analysis of the duties and

17   responsibilities of the plaintiff in the context of the

18   employer's business.

19         BlueCross BlueShield of Tennessee has the

20   burden of proving undue hardship by a preponderance of

21   the evidence.

22         Back pay damages and mitigation.  If, under the

23   Court's instructions, you find that the defendant

24   engaged in the discriminatory -- discriminatory actions

25   alleged by the plaintiff and you find that the

1    plaintiff's damages were legally caused by the

2    defendant's discriminatory actions, then you shall award

3    the plaintiff the actual damages she has sustained.

4         For wrongful loss of employment, plaintiff

5    shall be awarded back pay damages and the present value

6    of any lost employment benefits.  Back pay is the sum of

7    wages the plaintiff would have earned from the date of

8    termination of employment through today's date.  The

9    plaintiff has a duty to mitigate her back pay damages.

10   Any back pay and employment benefits you award the

11   plaintiff shall be reduced by any employment earnings

12   and benefits the plaintiff earned or could have earned

13   through reasonable diligence.  The defendant has the

14   burden of establishing that the plaintiff failed to use

15   reasonable diligence in -- in mitigating damages.  The

16   defendant must prove both the availability of suitable

17   and comparable substitute employment and the lack of

18   reasonable diligence on the part of the plaintiff.

19        Compensatory damages.  In addition to back pay

20   damages, you shall award a sum of money to compensate

21   the plaintiff for any non-wage damages the plaintiff

22   suffered as a legal result of the plaintiff's unlawful

23   actions.  This is sometimes referred to as "compensatory

24   damages."  Compensatory damages may be awarded for

25   embarrassment, humiliation, emotional pain, suffering,

1    inconvenience, mental anguish, loss of enjoyment of
2    life, and other nonpecuniary losses.

3         The words "embarrassment" and "humiliation" are
4    used in their everyday meaning.  Not every embarrassment
5    and humiliation, however, is compensable.  Embarrassment
6    and humiliation are compensable only when a reasonable
7    person with ordinary sensibilities under the same or
8    similar circumstances would be embarrassed and
9    humiliated.  There is no mathematical formula for
10   computing reasonable compensation for compensatory
11   damages, nor is it -- is the opinion of any witness
12   required as to the amount of such compensation.  In
13   making an award for such damages, you must use your best
14   judgment and establish an amount of damages that is fair
15   and reasonable in light of the evidence before you.

16        Punitive damages.  If you find that the
17   plaintiff -- if you find for the plaintiff, you may, but
18   are not required to, assess punitive damages against
19   BlueCross BlueShield of Tennessee.  The purposes of
20   punitive damages are to punish a defendant for its
21   conduct and to serve as an example or warning to the --
22   to BlueCross BlueShield of Tennessee and others not to
23   engage in similar conduct in the future.

24        To be eligible for punitive damages, the
25   plaintiff must prove, by a preponderance of the

 1   evidence, that punitive damages should be assessed

 2   against BlueCross BlueShield of Tennessee.  You may

 3   assess punitive damages only if you find that the

 4   conduct of BlueCross BlueShield of Tennessee's

 5   managerial employees or officers was done with malice or

 6   in the reckless disregard of the plaintiff's rights.  An

 7   action in which -- an action is with malice if a person

 8   knows that it -- it violates the law and does it anyway.

 9   An action is a reckless -- is in reckless disregard of

10   the plaintiff's rights if taken with knowledge that it

11   may violate the law.

12          In determining whether an employee or officer

13   was a managerial employee of BlueCross BlueShield of

14   Tennessee, you should consider the kind of authority

15   BlueCross BlueShield of Tennessee gave her or him, the

16   amount of discretion she or he had in carrying out job

17   duties, and the manner in which she or he carried them

18   out.  You should not, however, award the plaintiff

19   punitive damages if BlueCross BlueShield of Tennessee

20   proves that it made a good-faith effort to implement an

21   antidiscrimination policy.

22          If you decide to award punitive damages, you

23   will not assess an amount of punitive -- punitive

24   damages at this time.  You will, however, report your

25   finding to the Court.

1          Deliberations and verdict.  That concludes the

2     part of my instructions explaining the rules for

3     considering some of the testimony and evidence and the

4     law that applies in this case.

5          Now let me finish up by explaining some things

6     about your deliberations in the jury room and your

7     possible verdicts.

8          The first thing that you should do in the jury

9     room is choose someone to be your foreperson.  This

10    person will help to guide your discussions and will

11    speak for you here in court.

12         Once you start deliberating, do not talk to

13    Ms. Camp or to me or to anyone else except each other

14    about the case.  If you have any questions or messages,

15    you must write them down on a piece of paper, sign them,

16    and then give them to Ms. Camp.  Ms. Camp will give them

17    to me, and I will -- I will respond as soon as I can.  I

18    may have to talk to the lawyers about what you have

19    asked, so it may take me some time to get back to you.

20    Any questions or messages normally should be sent to me

21    through your foreperson.

22         One more thing about messages.  Do not ever

23    write down or tell anyone how you stand on your votes.

24    For example, do not write down or tell anyone that you

25    are split 3-3 or 4-2 or whatever your vote happens to

1    be.  That should stay secret until you're finished.

2          Experiments, research, investigation, and

3    outside communications.  Remember that you must make

4    your decision based only on the evidence -- based only

5    on the evidence that you saw and heard here in court.

6    For example, do not conduct any experiments inside or

7    outside the jury room.  Do not bring any books like a

8    dictionary or anything else with you to help you with

9    your deliberations.  Do not conduct any independent

10   research, reading, or investigation about the case, and

11   do not visit any of the places that were mentioned

12   during the trial.

13          During your deliberations, you must not

14   communicate with or provide any information to anyone by

15   any means about this case.  You may not use any

16   electronic devices or media, such as a telephone, cell

17   phone, smartphone, iPhone, Android, or computer, the

18   Internet, any Internet service, or any text or instant

19   messaging service, or any Internet chat room, blog, or

20   website, such as Facebook, Instagram, LinkedIn, YouTube,

21   or Twitter, to communicate to anyone any information

22   about this case or to conduct any research about this

23   case until I accept your verdict.

24          In other words, you cannot talk to anyone on

25   the phone, correspond with anyone, or electronically

1   communicate with anyone about -- about this case.  You

2   can only discuss the case in the jury room with your

3   fellow jurors during deliberations.  I expect you will

4   inform me as soon as you become aware of another juror's

5   violations of these instructions.

6           You may not use these electronic means to

7   investigate or communicate about the case because it is

8   important that you decide this case based solely on the

9   evidence presented in this courtroom.  Information on

10  the Internet or available through social media might be

11  wrong, incomplete, or inaccurate.  You are only

12  permitted to discuss the case with your fellow jurors

13  during deliberations because they have seen and heard

14  the same evidence you have.  In our judicial system, it

15  is important that you're not influenced by anything or

16  anyone outside of this courtroom.  Otherwise, your

17  decision may be based on information known only by you

18  and not your fellow jurors or the parties in the case.

19  This would unfairly and adversely impact the judicial

20  process.

21          A juror who violates these restrictions

22  jeopardizes the fairness of these proceedings, and a

23  mistrial could result, which would require the entire

24  trial process to start over.

25          Duty to deliberate, unanimous verdict.  Now

1  that all the evidence is in and the arguments are

2  complete, you are free to talk about the case in the

3  jury room.  In fact, it is your duty to talk with each

4  other about the evidence and to make every reasonable

5  effort you can to reach unanimous agreement because your

6  verdict, whether it is for the plaintiff or the

7  defendant, must be unanimous.

8        Talk with each other, listen carefully and

9  respectfully to each other's views, and keep an open

10  mind as you listen to what your fellow jurors have to

11  say.  Try your best to work out your differences.  Do

12  not hesitate to change your mind if you're convinced

13  that other jurors are right and that your original

14  position was wrong.

15        But do not ever change your mind just because

16  other jurors see things differently or just to get the

17  case over with.  In the end, your vote must be exactly

18  that, your own vote.  It is important for you to reach

19  unanimous agreement, but only if you can do so honestly

20  and in good conscience.  The verdict must represent the

21  considered judgment of each juror.

22        No one will be allowed to hear your discussions

23  in the jury room, and no -- and no record will be made

24  of what you say.  So you should feel free to speak your

25  minds.

1          Listen carefully to what other jurors have to

2     say, and then decide for yourself if plaintiff has

3     proved her case by a preponderance of the evidence.

4          Juror notes.  Remember that if you elected to

5     take notes during the trial, your notes should be used

6     only as memory aids.  You should not give your notes

7     greater weight than your independent recollection of the

8     evidence.  You should rely upon your own independent

9     recollection of the evidence or lack of evidence, and

10    you should not be unduly influenced by the notes of

11    other jurors.

12          Notes are not entitled to any more weight than

13    the memory or impression of each juror.  Whether you

14    took notes or not, each of you must form and express

15    your own opinion as to the facts of the case.

16          Court has no opinion.  Let me finish up by

17    repeating something that I said to you earlier.  Nothing

18    that I have said or done during this trial was meant to

19    influence your decision in any way.  You decide for

20    yourselves the issues presented in this case.

21          And then, lastly, I have your verdict form.  It

22    will be back there with you with your instructions.

23    It's titled at the top.  It has the caption of this

24    case, United States District Court, Eastern District of

25    Tennessee at Chattanooga.  It has the plaintiff, the

1    defendant listed.  Tanja Benton, plaintiff; BlueCross

2    BlueShield of Tennessee, Incorporated, defendant.  And

3    it has my name over here and a case number.  And then it

4    says "verdict form."

5           We, the jury, unanimously answer the following

6    questions:

7           Question one:  Has the plaintiff, Tanja Benton,

8    proven by a preponderance of the evidence that her

9    refusal to receive the COVID vaccination was based upon

10   a sincerely held religious belief?

11         There's a place to check "yes" and a place to

12   check "no."

13         If you answered "yes," please proceed to the

14   next question.  If you answered "no," then your

15   deliberations are at an end.  Please have the foreperson

16   sign and date this form and return it to the court

17   officer.

18         Question two, has the defendant, BlueCross

19   BlueShield of Tennessee, proven by a preponderance of

20   the evidence that it offered a reasonable accommodation

21   to the plaintiff?

22         There's a place to check "yes" and a place to

23   check "no."

24         If you answered "yes," then your deliberations

25   are at an end.  Please have the foreperson sign and date

1   this form and return it to the court officer.  If you

2   answered "no," please proceed to the next question.

3        Question number three, has the defendant,

4   BlueCross BlueShield of Tennessee, proven by a

5   preponderance of the evidence that it could not

6   reasonably accommodate the plaintiff's religious beliefs

7   without undue hardship?

8        A place to check "yes" and a place to check

9   "no."

10       If you answered "yes," then your deliberations

11  are at an end.  Please have the foreperson sign and date

12  this form and return it to the court officer.  If you

13  answered "no," please proceed to the next question.

14       Question number four, under the law as given to

15  us in the Court's instructions, we award the following

16  damages to the plaintiff, Tanja Benton:

17       Back pay damages.

18       There's a blank space.

19       Compensatory damages.

20       There's a blank space.

21       Question five, if you awarded damages of any

22  type in response to question four, do you find that the

23  plaintiff, Tanja Benton, has proven by a preponderance

24  of the evidence that she is entitled to punitive

25  damages?

1          A place to check "yes" and a place to check

2     "no."  Sign and date below and alert the courtroom

3     deputy that you have reached a verdict.  And then

4     there's a place for the jury -- jury foreperson to print

5     their name and sign this document and date it.

6          All right.  Ladies and gentlemen, I'm now going

7     to ask you to retire to the jury room and to deliberate.

8          (Subsequent proceedings were heard but

9          not requested to be transcribed herein.)

10         THE COURT:  Ladies and gentlemen, you have

11    decided that the plaintiff is entitled to punitive

12    damages.  You must use sound reasoning in setting the

13    amount of these damages.  Punitive damages, if any,

14    should be in an amount sufficient to fulfill the

15    purposes that I have described to you, but should not

16    reflect bias, prejudice, or sympathy toward either or

17    any party.  The plaintiff has the burden of proving by a

18    preponderance of the evidence the amount of punitive

19    damages that you should award.

20         In making your decision, you must consider the

21    instructions I have already given you and also the

22    following:

23         One, the objectionable nature of the

24    defendant's wrongdoing, the impact of the defendant's

25    conduct on the plaintiff, and the relationship of the

1  parties;

2          Two, the defendant's awareness of the amount of

3  harm being caused and the defendant's motivation in

4  causing the harm;

5          Three, the duration of the defendant's

6  misconduct and whether the defendant attempted to

7  conceal the conduct;

8          Four, the amount of money the plaintiff has

9  spent in the attempt to recover the losses;

10          Five, whether defendant profited from the

11  activity, and if so, whether the punitive award should

12  be in excess of the profit in order to deter similar

13  future behavior;

14          Six, the number and amount of previous punitive

15  damage awards against the defendant based upon the same

16  wrongful act;

17          Seven, whether once the misconduct became known

18  to the defendant, the defendant tried to remedy the

19  situation or offered a prompt and fair settlement for

20  the actual harm caused;

21          And, eight, any other circumstances shown by

22  the evidence that bears on determining the proper amount

23  of the punitive award.

24          You have already awarded the plaintiff

25  compensatory damages for the purpose of making the

1   plaintiff whole.  The purpose of an award for punitive

2   damages is to punish the wrongdoer and to deter

3   misconduct by the defendant or others.  You may consider

4   some or all of these factors in your decision, and you

5   should give them such weight you believe they deserve.

6          Remember and apply the instructions I have

7   already given you.  An award of punitive damages is

8   discretionary: that is, having found that the legal

9   requirements for punitive damages are satisfied, you may

10  ultimately decide to award punitive damages or you may

11  decide not to award them.  The amount you determine to

12  award the plaintiff for punitive damage damages, if any,

13  must be unanimous.

14         And I'm going to send you back with another

15  verdict form.  It's titled "verdict form for punitive

16  damages phase."

17         It says, "We, the jury, unanimously answer the

18  following questions:

19         "One, what amount of punitive damage" --

20  damages, if any, do you award the plaintiff?"

21         And there is a space there for you to write a

22  number in there.  Sign and date below, and alert the

23  courtroom deputy that you have reached a verdict.  Jury

24  foreperson to write name and then sign and date.

25         All right.  Ladies and gentlemen, I'm going to

1   ask you to retire and deliberate on this issue.

2        (Subsequent proceedings were heard but

3        not requested to be transcribed herein.)

4        END OF PROCEEDINGS

5             I, Stephanie Fernandez, do
hereby certify that I reported in machine shorthand the
6   proceedings in the above-styled cause, and that this
transcript is an accurate record of said proceedings.

7

                      s/Stephanie Fernandez
8                     Stephanie Fernandez,
                    Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25